T. S. MEMORY v. W. G. WELLS AND WIFE, VICTORIA MARRAN WELLS.

(Filed 25 May, 1955.)

**1. Adverse Possession § 17—**

There is a rebuttable presumption of fact that possession is in him who has the true title.

**2. Same—**

Where plaintiff shows a common source of title and title to the disputed area in himself from that source, and defendants assert title to the disputed area by adverse possession, the burden on the issue of adverse possession is upon defendants.

**3. Adverse Possession § 19—**

Where defendants assert title to the *locus in quo* by adverse possession, and the evidence is conflicting as to whether they had been in the exclusive possession for the statutory period, the issue is for the jury, and the defendants' motion to nonsuit is properly denied upon plaintiff's evidence establishing a common source of title and legal title from that source.

**4. Adverse Possession § 18—**

A witness may testify as to the acts of ownership exercised over the property, but is not entitled to testify to the conclusion that she or her predecessors in title had been in the adverse, open and notorious possession of the land, this being the question for the determination of the jury under correct instructions.

**5. Same—**

Testimony as to statements made by predecessors in title as to their acts of dominion and ownership over the *locus in quo* are incompetent as self-serving and hearsay.

**6. Ejectment § 16—**

In an action for the possession of realty, plaintiff may introduce in evidence a deed referred to in defendants' answer for the limited purpose of attacking it.

**7. Boundaries § 5e—**

A map made by a civil engineer appointed by the court and acting under court order for both parties is competent in evidence not only for the purpose of illustrating the testimony, but also as evidence of the contentions of the parties, and the court surveyor may testify with reference to the beginning points of his survey, and how he located them, and the course and distance of the lines shown on the map.

APPEAL by defendants from *Paul, S. J.*, December 1954 Term, BRUNS-WICK.

Civil action: (1) To have the plaintiff declared the owner and entitled to possession of a certain specifically described lot in the Town of Southport; and (2) to require the defendants to remove an archway and fence constructed by them upon the plaintiff's lot.

The defendants denied plaintiff's ownership and right to possession of the land upon which the archway and fence were constructed, and allege they are the owners by virtue of having held the same adversely under known and visible lines and boundaries for more than 20 years, and under color of title for more than seven years.

The parties own adjoining lots. Their houses front on Lord Street, have been built for many years, and are about 12 feet apart. The land in dispute consists of a driveway 7.78 feet wide, beginning at Lord Street and extends between the two houses to plaintiff's garage located at the back of his house. This driveway provides the only means of access by vehicle from the street to the plaintiff's garage and the back of his lot.

The plaintiff offered in evidence a warranty deed to himself from H. A. Jones and wife, dated 6 July, 1951, conveying the lot described in his complaint. He then offered recorded deeds in the inverse order of their date and registration, connecting his title with that of Joseph Keen who conveyed to Catherine Price for life, and upon her death to her children by her husband, Jacob A. F. Price. The Keen deed is dated 10 November, 1868. The parties stipulated: "That so far as the record title is concerned, Catherine Price and her children by Jacob A. F. Price are the ancestors in title of the plaintiff and the defendants."

The plaintiff called as a witness John Davis, licensed civil engineer who "was appointed and acted as court surveyor in this matter." Mr. Davis testified he established for the purpose of his survey two stone monuments, one at the intersection of Davis and Nash Streets, and the other at the intersection of Caswell and Nash Streets, established a base line between the monuments, and therefrom surveyed the lots of the parties and their respective contentions as to the boundary line between them. The disputed area is shown on the court map as included in A-B-C-D-A. The disputed driveway is covered by the plaintiff's deed.

The plaintiff called as a witness Mr. J. I. Davis, who testified in substance that he is 73 years old and has lived in Southport with the exception of two years. He lived across the street from the property for 32 years. At this time there is a short fence near the bay window of the Memory house. It was put there in 1946. Prior to that time no fence was there, but there was a fence about 18 inches from the side of the Wells house. That fence was there 32 years ago. Between the

fence (18 inches from the Wells house) and the fence put there in 1946 (near the bay window of the Memory house) there was grass, which was tended and cut by Mr. O'Brian who lived in the Memory house.

The defendants introduced a number of witnesses who testified the fence had been located for as much as 40 years near (within about one foot) of the Memory house, and that the defendants and their predecessors in title had been in the peaceful possession of the disputed land for as long as 40 years. One of the defendants' witnesses testified she once owned the Memory lot and lived there from 1921 to 1938. A fence separated the two lots and the driveway was on the defendants' side of the fence. The witness built a garage back of her house and used the driveway to and from the garage. A number of defendants' other witnesses testified that the defendants and their predecessors in title had been in possession of the disputed driveway for more than 20 years. Some of them, however, testified that the driveway had been used by the predecessors in title of both parties. At the close of all the evidence the defendants renewed their motion for judgment of nonsuit, which had first been interposed at the close of the plaintiff's evidence, both of which were overruled by the court.

The parties stipulated two issues should be submitted as determinative of the matters in dispute:

1. Is the plaintiff the owner of and entitled to the possession of that certain lot of land shown upon the court map by the letters A-B-C-D-A?

2. Have the defendants, Wiley G. Wells and wife, Victoria Marren Wells, and their ancestors in title been in the continuous, open, notorious and adverse possession of the lands shown upon the court map by the letters A-B-C-D-A under known and visible lines and boundaries for a period of 20 years prior to the commencement of this action?

The parties stipulated, further, the court should submit only the second issue to the jury and if the jury answered the second issue, yes, the court should answer the first issue, no; but if the jury answered the second issue, no, the court should answer the first issue, yes.

The jury answered the second issue, "No." The court then answered the first issue, "Yes," and rendered judgment for the plaintiff, from which the defendants appealed.

*Ray H. Walton for plaintiff, appellee.*
*Isaac C. Wright and R. I. Mintz for defendants, appellants.*

HIGGINS, J. The plaintiff alleges he is the owner and entitled to the possession of a specifically described lot in the Town of Southport, and that the defendants have trespassed on a portion of that lot by erecting

an archway and fence thereon. The answer denies the plaintiff's owner-ship and asserts the defendants are owners of that portion of the lot in dispute by reason of title acquired by adverse possession. By stipula-tion the disputed area is designated by the letters A-B-C-D-A, on the surveyor's map. The stipulations do little more than pinpoint the main issue raised by the pleadings—the defendants' title by adverse posses-sion.

The issue before the jury was: Did the defendants carry the burden of showing by the greater weight of the evidence that they and their predecessors in title had been in the open, notorious, exclusive and hostile possession of the disputed driveway under known and visible boundaries for 20 years?

At the outset the defendants are confronted with the presumption that possession is in him who has the true title. *Gibson v. Dudley,* 233 N.C. 255, 63 S.E. 2d 630; *Vanderbilt v. Chapman,* 175 N.C. 11, 94 S.E. 703. The presumption, of course, is one of fact and may be rebutted. The pleadings and the stipulations, construed together, place the record title in the plaintiff, and his right to the disputed area can be defeated only by a finding defendants have acquired title by adverse possession. According to defendants' evidence, the hostile flag was raised over the disputed driveway by the construction of the fence which blocked the plaintiff and his predecessors in title from using it. Plaintiff's evidence fixes 1946 as the date the fence was erected. Defendants' witnesses fix a much earlier date, as much as 40 years ago, though some of them say the former owners of both lots used the driveway. The evidence of adverse possession was conflicting. The burden of the issue was upon the defendants. The jury's verdict says they failed to carry that burden.

Unless reversible error appears in the court's ruling on the admissi-bility of evidence on the issue of adverse possession, or in the charge on that issue, the judgment must be affirmed. Twenty assignments of error based on 44 exceptions appear in the record. The exceptions were taken by counsel who were careful to see the defendants' rights were protected. All have been examined. Only a few require discussion. Mrs. Wells, one of the defendants, would have testified, if permitted, that she, her mother and grandmother had been in the open, notorious and adverse possession of the land in dispute for more than 20 years. The evidence offered is a conclusion which the jury may draw from competent evidence, but the witness is not permitted to do so. A wit-ness may tell what use has been made—what acts of ownership have been exercised over the property. Then it is for the jury to say, under proper instructions, whether that constitutes open, notorious and ad-verse possession. The evidence was properly excluded in the form offered. Mrs. Wells offered to testify also as to statements made to her

by her predecessors in title in respect to their acts of dominion and ownership over the *locus in quo*. They were properly excluded as being both self-serving and hearsay.

"For the purpose of attacking the contentions of the defendant as to the beginning clause of that deed of John E. Price set out in the answer and for that purpose only," the plaintiff offered a deed dated 6 March, 1880. The defendants objected to the limited purpose for which the deed was offered. The objection is without merit. A deed is frequently offered for the purpose of attacking it. This is true especially in actions to remove cloud upon title. It would be difficult to make out such a case otherwise. In this case the deed would have been harmless if offered generally. The only question before the jury was the defendants' adverse possession for 20 years. The stipulation eliminated all other issues.

The defendants objected to the introduction in evidence of the map made by Mr. Davis, surveyor appointed by the court under G.S. 38-4. Mr. Davis testified he is a licensed civil engineer and surveyor; that he made a survey and map of the lands belonging to the parties. He conferred with counsel for both parties and surveyed their respective contentions and designated them on his map. The map was properly received in evidence over objection. Ordinarily, a map or photograph is admissible only for the limited purpose of enabling witnesses to explain and illustrate their testimony. *S. v. Norris*, 242 N.C. 47. In the case of *Poole v. Gentry*, 229 N.C. 266, 49 S.E. 2d 464, this Court admitted a map of lands in dispute for the limited purpose of enabling the witnesses to explain their testimony. In that case, however, the map was made by the surveyor employed by one of the parties. In this case the map was made by a court-appointed civil engineer acting under court order and for both parties. The map was admissible not only for the purpose of illustrating the testimony, but also as evidence of the contentions of the parties.

The exceptions of the defendants to the testimony of the court surveyor with reference to the beginning points of his survey, how he located them, and the course and distance of the lines shown on the map cannot be sustained.

The court properly overruled the defendants' motion for judgment of nonsuit. The pleadings and stipulations placed upon them the burden of defeating plaintiff's claim by proving title in themselves by adverse possession for the statutory period. It is for the jury and not for the court to say whether the defendants have carried the burden. *Bryan v. Spivey*, 109 N.C. 57, 13 S.E. 766; *Power Co. v. Taylor*, 194 N.C. 231, 139 S.E. 381; *Bryant v. Murray*, 239 N.C. 18, 79 S.E. 2d 243. The case at bar is strikingly similar to the case of *Gibson v. Dudley, supra,* with

the parties reversed. In the *Gibson case* the plaintiff claimed the driveway by 20 years adverse possession and the defendant claimed by reason of superior paper title. The claim of adverse possession failed in the *Gibson case.* It fails here.

The numerous exceptions taken during the progress of the trial, including request for special instructions, have been examined. The charge, as given, presents the issue fully and fairly and is in substantial accord with established legal principles. Sufficient reason to disturb the verdict does not appear.

No error.