BOBBY CARL SHEPPARD, Plaintiff v. ZEP MANUFACTURING COMPANY, NATIONAL SERVICE INDUSTRIES, INC., and CAMILLE .GRIFFIN, Defendants

No. 9330SC227

(Filed 15 March 1994)

1. **Negligence § 22 (NCI4th) — demonstration of cleaning product — employee injured — no directed verdict for manufacturer of product**

   The trial court properly denied defendant's motion for a directed verdict and properly failed to give requested instructions in a negligence action where defendant Zep Manufacturing demonstrated one of its products on-site at Champion; Champion employees directed defendant's sales representative to an area where there was less traffic; defendant's representative applied the chemical to the floor; the product needed to remain on the floor for approximately thirty minutes after application; that area of the plant was hot and noisy, so the representative and the Champion employee went to an office; defendant's representative left a bucket and mop in the area as a warning; there were no other warnings or barriers; plaintiff, another Champion employee, walked through the area, fell, and suffered burns on his arm and face; and defendant contended that it could not be held liable for Champion's negligence in failing to warn its employees of a dangerous condition which it created. The risk of harm from the dangerous chemical was unduly great and a jury could reasonably conclude that defendant was not entitled to rely on the inadequate actions or representations of plaintiff's employer in order to evade liability for plaintiff's injuries.

   **Am Jur 2d, Negligence §§ 492, 591 et seq.**

2. **Master and Servant § 89.4 (NCI3d) — employee burned in cleaner demonstration — action by employee against manufacturer of product — instructions — joint liability**

   The trial court did not err in a negligence action by a Champion employee against defendants, which had demonstrated a chemical cleaning product in a Champion facility, by instructing the jury that if the negligent acts of the agents of Champion and defendant manufacturer concurred or joined together to produce the claimed injury, then the conduct of each is a

proximate cause of plaintiff's injuries and defendants and Champion would be jointly and severally liable for all the damages suffered. Although defendants argue that the instruction was prejudicial in that the jury was led to believe that Champion (which was not a defendant) would share equally in any damages assessed against defendants, it is well established that the term jointly and severally implies that one tortfeasor could pay for all of plaintiff's damages. Additionally, the instruction did not ask the jury to apportion the amount of damages between defendants and Champion and the third issue specifically asked the jury the amount, if any, plaintiff was entitled to recover of the defendants. N.C.G.S. § 97-10.2.

**Am Jur 2d, Master and Servant § 397.**

Appeal by defendants from judgment signed 8 October 1992 by Judge Forrest A. Ferrell in Haywood County Superior Court. Heard in the Court of Appeals 8 December 1993.

Defendant National Service Industries, Inc., (hereinafter "National") is the parent corporation of its unincorporated division, defendant Zep Manufacturing Company (hereinafter "Zep Manufacturing"). Camille Griffin, defendant Zep Manufacturing's "outside sales representative," was preparing an on-site demonstration of defendant Zep Manufacturing's chemical cleaning product at the premises of Champion International Corporation (hereinafter "Champion") on 26 April 1989. On 26 August 1991, plaintiff, an employee of Champion, filed a complaint against defendants seeking recovery for injuries he received when he was burned on his arm and face after slipping and falling into the chemicals.

The facts pertinent to this appeal are as follows: sometime during March 1989, Champion and Zep Manufacturing made plans for an on-site demonstration of Zep Formula 1365, a chemical product that removes epoxy floor finishes. On 26 April 1989, Ms. Griffin went to carry out a demonstration of the chemical product at Champion's shop, which was also plaintiff's workplace.

Jack J. Swanger, Champion's manager of support operations, testified as follows: on 26 April 1989, Charlie Neal, manager of plant services, told him (Mr. Swanger) that Ms. Griffin "want[ed] to do a trial area." Mr. Swanger took Ms. Griffin to the "extruder department." They went to the office of Claude Rogers, Champion's production manager and Mr. Swanger's "boss." Mr. Swanger asked

## SHEPPARD v. ZEP MANUFACTURING CO.

[114 N.C. App. 25 (1994)]

Mr. Rogers where the test should be performed. Mr. Rogers replied " 'Go over here behind the guardrail where there's no traffic.' " The area was used for drying polyesters. The yellow guardrails were meant "to keep people, jitneys, any kind of traffic, out of this area. . . . because [the] dryers are very hot when in use. . . . [T]he only people we knew was [sic] going to be in that area are people that worked in this area."

·Ms. Griffin testified as follows: Mr. Swanger selected the site and "suggested that we approach the area that's outlined, and he said to put the product down on the inside of the guardrail. He pointed out the specific area where the demo was to be done, because he felt that it was safer there. That there would be less traffic, so on and so forth. Because he understood that it was going to have to be down for about twenty to thirty minutes. And this was his choice and where he wanted it put down." For purposes of showing its effectiveness during the demonstration, the chemical product needed to be applied to the floor and left on the floor for approximately 30 minutes prior to the demonstration. Ms. Griffin testified that after placing the chemical liquid on the floor of the shop, she was the only person who set up a warning, which consisted of a mop or broom and a one gallon container at one end of the demonstration area. Mr. Swanger testified that "it was so noisy, we couldn't talk, so that's when we stepped into my office." Ms. Griffin testified that upon leaving the demonstration area she placed the bottle and the mop or broom "across the one entrance to the demo area strictly because I had put a product on the floor, and I was just leaving the area, and I personally wanted to draw somebody's attention to the fact that there was something on the floor. . . . It was not meant as a barricade, strictly as a visual to draw their attention."

Mr. Swanger testified that he did not set up a warning sign or barricade because "I didn't know what we were fooling with. I didn't know a thing about it, nor was it explained. . . . Well, my boss and I felt like it was in a place that there really wasn't a need for it." Ms. Griffin testified that when she first met Mr. Swanger, "[w]e spoke briefly about what was going to come down, because he was not aware of the demonstration. He was just brought in on spur of the minute and asked to supervise this."

During this time, plaintiff was operating a shredder approximately one hundred yards away from the area. When the shredder

became clogged, he needed to go to the roof to repair the problem. On his way, while Ms. Griffin and Mr. Swanger were in the office away from the demonstration area, plaintiff entered the area where the corrosive chemical was on the floor. Plaintiff slipped and fell in the chemical liquid; the skin on his face and on one of his arms made contact with the liquid. Plaintiff testified that he did not see the liquid on the floor, that there was no sign, barricade, or tape warning, and that no person was present in the area to warn of the potential danger. Plaintiff testified that he saw the mop and bucket but that these items were usually at that location. He testified that the place where the accident occurred was at "the normal way of going" through that part of the shop. As a result of the burns, plaintiff had to undergo the surgical removal of dead skin on his arm and suffered *inter alia* permanent and photosensitive scars to his arm and face.

The chemical product's 2 February 1989 "Material Safety Data Sheet and Safe Handling and Disposal Information" warned *inter alia* that the chemical was "corrosive on contact" and that "contact with liquid can cause immediate tissue damage or destruction to skin, eyes (can cause blindness), or upper respiratory tract. . . . SPECIAL PRECAUTIONS . . . Keep product away from skin and eyes." Ms. Griffin testified that she wore nytral gloves when applying the product. The "material safety data sheet" stated that the chemical product's "hazardous decomposition" contained "carbon dioxide, carbon monoxide, hydrogen chloride, and small amounts of phosgene & chlorine gas." Ms. Griffin testified that "[a]ll of our material data safety sheets and product information that adhered to the product itself states [sic] how it is to be applied and all precautionaries [sic] and so on and so forth. So, I already knew all that." Ms. Griffin testified that she was unsure of whether she gave the "material safety data sheet" to the shop supervisor or placed it on someone's desk at the office.

The trial was held on 28 September 1992. Defendants' motion for a directed verdict at the close of plaintiff's evidence was denied by the trial court. The jury found as follows:

1. Was the plaintiff injured by the negligence of the defendants?

Answer: Yes.

2. Did the plaintiff, through his own negligence, contribute to his injuries?

SHEPPARD v. ZEP MANUFACTURING CO.

[114 N.C. App. 25 (1994)]

Answer: No.

3. What amount, if any, is plaintiff entitled to recover of the defendants?

Answer: $25,000.00

4. Did the negligence of Champion International Corporation, if any, join and concur with the negligence of the defendants in causing the plaintiff's injuries?

Answer: Yes.

Defendants appeal.

*Holt, Bonfoey, Brown & Queen, PA, by Richlyn D. Holt and Frank G. Queen, for plaintiff-appellee.*

*Van Winkle, Buck, All, Starnes and Davis, P.A., by Phillip J. Smith and Michelle Rippon, for defendant-appellants.*

EAGLES, Judge.

Defendants bring forward three assignments of error. After a careful review of the record, transcript and briefs, we find no error.

I.

[1]   In their first two assignments of error, defendants argue that: 1) they are entitled to a directed verdict because "defendants cannot be held liable for the employer's [Champion's] negligence in failing to warn its [Champion's] employees of a dangerous condition which it created," and; 2) the "trial court erred in failing to instruct the jury that if the defendants were fully assured that because of the location of the demonstration no warnings were necessary, then the defendants owed no further duty to the plaintiff." We disagree with both of defendants' contentions.

Regarding the standard of review of a defendant's motion for directed verdict, this Court has stated:

"A motion by a defendant for a directed verdict under G.S. 1A-1, Rule 50(a) tests the legal sufficiency of the evidence to take the case to the jury and support a verdict for the plaintiff." *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E.2d 678 (1978). In determining whether a trial judge's ruling on defendant's motion for a directed verdict was proper, "plaintiffs' evidence must be taken as true and all the evidence

must be considered in the light most favorable to the plaintiffs, giving plaintiffs the benefit of every reasonable inference." *West v. King's Dept. Store, Inc.*, 321 N.C. 698, 365 S.E.2d 621 (1988). "A directed verdict is improper unless it appears, as a matter of law, that a recovery cannot be had by the plaintiff upon any view of the facts which the evidence reasonably tends to establish." *Id.* With these principles as our guide, we must determine whether the plaintiff's evidence, when considered in the light most favorable to plaintiff, was legally sufficient to withstand defendant's motion for a directed verdict as to any of its claims.

*B. B. Walker Co. v. Burns International Security Services*, 108 N.C. App. 562, 564-65, 424 S.E.2d 172, 173-74, *disc. rev. denied*, 333 N.C. 536, 429 S.E.2d 552 (1993). To establish a claim of negligence sufficient to survive defendants' motion for directed verdict,

the plaintiff must introduce evidence tending to show that (1) defendant failed to exercise proper care in the performance of a duty owed to plaintiff; (2) the negligent breach of that duty was a proximate cause of plaintiff's injury; and (3) a person of ordinary prudence should have foreseen that plaintiff's injury was probable under the circumstances as they existed. *Jordan v. Jones*, 314 N.C. 106, 331 S.E.2d 662 (1985).

*Rose v. Steen Cleaning, Inc.*, 104 N.C. App. 539, 541, 410 S.E.2d 221, 222 (1991). *See also Talian v. City of Charlotte*, 98 N.C. App. 281, 283, 390 S.E.2d 737, 739, *aff'd per curiam*, 327 N.C. 629, 398 S.E.2d 330 (1990). Additionally, here we are presented with alleged negligence arising from defendants' handling of a dangerous chemical liquid, for which there was a "material safety data sheet" enumerating its many hazards, including hazards to the human skin upon contact with the chemical liquid. Regarding the events immediately preceding plaintiff's slip and fall, Ms. Griffin testified as follows:

Q: So he [Mr. Swanger] selected the site?

A: That's right. It's his house, and he showed me where to put it down so to speak.

Q: Okay. What happened next?

A: We did. I got down there and put the product down on the floor, and it was either a $3 \times 3$ or $4 \times 4$ square. I tried to keep it neatly and in order, because when my demo worked

as I hoped it would, I wanted to show them a very definite difference. So, I put it down in this area that he pointed out. . . .

. . . .

Q: . . . . After you applied the formula and stood up, what took place next?

A: I told him again that we—that this was going to have to sit there for twenty to thirty minutes. It was warm in the plant, and he [Mr. Swanger] stated, "Let's go back to the office where it's air conditioned to get out of the heat."

Q: At the time that you stood up and you and he had that conversation, did you see anyone else in the plant at that time?

A: No, I didn't—not in the area that I was in, no.

Q: What did you do when he said "Let's go back to the office where it's air conditioned?"

A: Well, at that point, I realized that we were going to leave the area. And just because it's my normal way of doing a demo, I took the bottle, and I can't remember whether it was—it was a long handled either broom or mop—I can't remember which. And I just sort of laid them laid across the one entrance to the demo area strictly because I had put a product on the floor, and I was just leaving the area, and I personally wanted to draw somebody's attention to the fact that there was something on the floor.

. . . .

Q: So, one could still travel through that area?

A: Yeah. It was not meant as a barricade, strictly as a visual to draw their attention.

. . . .

Q: How long were you gone?

A: Twenty to thirty minutes.

Q: Could you see the area from his office?

A: I couldn't. He had a window that looked out over to that area, but my seat was with my back to the window. From

his desk, he faced the window. But I never looked out the window so I couldn't tell you what could be seen out the window.

Plaintiff testified that he did not see the liquid on the floor, that no person was present in the area to warn of the potential danger, and that there was no barricade, sign, or tape warning.

Professors Prosser and Keeton have noted that "where the risk of harm is unduly great, it is not reasonable care to rely upon the responsibility of others." W. P. Keeton, Ed., *Prosser and Keeton on Torts*, at 204 (5th Ed. 1984). Here, we conclude that the risk of harm from the dangerous chemical was unduly great and that under these circumstances a jury could reasonably conclude that defendants were not entitled to rely on the inadequate actions or representations of plaintiff's employer in order to evade liability for plaintiff's injuries. While it is possible that a potential buyer's specific conduct or representations could insulate a seller from total liability in a sales demonstration, we hold that on this record no evidence exists to compel such a finding here for purposes of directed verdict. We particularly note that there was no express contract of indemnity between defendants and the employer. G.S. 97-10.2(e). When viewed in the light most favorable to plaintiff as nonmovant, we conclude that the issue of defendants' negligence was a question for the jury and that the trial court properly denied defendants' motion for a directed verdict. Further, we conclude that the trial court did not err in failing to give the requested instruction. Accordingly, these assignments of error fail.

## II.

[2] In their third assignment of error, defendants argue that the trial court erred by instructing the jury "that Champion [plaintiff's employer] would be jointly and severally liable for all damages suffered by the plaintiff" and that this instruction "was contrary to the law, misleading, and constituted prejudicial error." (Emphasis in original.) We find no prejudicial error.

Under the Workers' Compensation Act, G.S. 97-10.2 provides:

(a) The right to compensation and other benefits under this Article for disability, disfigurement, or death shall not be affected by the fact that the injury or death was caused under circumstances creating a liability in some person other than the employer to pay damages therefor, such person hereinafter being referred to as the "third party." The respec-

SHEPPARD v. ZEP MANUFACTURING CO.

[114 N.C. App. 25 (1994)]

tive rights and interests of the employee-beneficiary under this Article, the employer, and the employer's insurance carrier, if any, in respect of the common-law cause of action against such third party and the damages recovered shall be as set forth in this section.

(b) The employee, or his personal representative if he be dead, shall have the exclusive right to proceed to enforce the liability of the third party by appropriate proceedings if such proceedings are instituted not later than 12 months after the date of injury or death, whichever is later. During said 12-month period, and at any time thereafter if summons is issued against the third party during said 12-month period, the employee or his personal representative shall have the right to settle with the third party and to give a valid and complete release of all claims to the third party by reason of such injury or death, subject to the provisions of (h) below.

(c) If settlement is not made and summons is not issued within said 12-month period, and if employer shall have filed with the Industrial Commission a written admission of liability for the benefits provided by this Chapter, then either the employee or the employer shall have the right to proceed to enforce the liability of the third party by appropriate proceedings; either shall have the right to settle with the third party and to give a valid and complete release of all claims to the third party by reason of such injury or death, subject to the provisions of (h) below. Provided that 60 days before the expiration of the period fixed by the applicable statute of limitations if neither the employee nor the employer shall have settled with or instituted proceedings against the third party, all such rights shall revert to the employee or his personal representative.

(d) The person in whom the right to bring such proceeding or make settlement is vested shall, during the continuation thereof, also have the exclusive right to make settlement with the third party and the release of the person having the right shall fully acquit and discharge the third party except as provided by (h) below. A proceeding so instituted by the person having the right shall be brought in the name of the employee or his personal representative and the employer or the insurance carrier shall not be a necessary or proper party thereto.

If the employee or his personal representative shall refuse to cooperate with the employer by being the party plaintiff, then the action shall be brought in the name of the employer and the employee or his personal representative shall be made a party plaintiff or party defendant by order of court.

(e) The amount of compensation and other benefits paid or payable on account of such injury or death shall be admissible in evidence in any proceeding against the third party. In the event that said amount of compensation and other benefits is introduced in such a proceeding the court shall instruct the jury that said amount will be deducted by the court from any amount of damages awarded to the plaintiff. If the third party defending such proceeding, by answer duly served on the employer, sufficiently alleges that actionable negligence of the employer joined and concurred with the negligence of the third party in producing the injury or death, then an issue shall be submitted to the jury in such case as to whether actionable negligence of employer joined and concurred with the negligence of the third party in producing the injury or death. The employer shall have the right to appear, to be represented, to introduce evidence, to cross-examine adverse witnesses, and to argue to the jury as to this issue as fully as though he were a party although not named or joined as a party to the proceeding. Such issue shall be the last of the issues submitted to the jury. If the verdict shall be that actionable negligence of the employer did join and concur with that of the third party in producing the injury or death, then the court shall reduce the damages awarded by the jury against the third party by the amount which the employer would otherwise be entitled to receive therefrom by way of subrogation hereunder and the entire amount recovered, after such reduction, shall belong to the employee or his personal representative free of any claim by the employer and the third party shall have no further right by way of contribution or otherwise against the employer, except any right which may exist by reason of an express contract of indemnity between the employer and the third party, which was entered into prior to the injury to the employee. In the event that the court becomes aware that there is an express contract of indemnity between the employer and the third party the court may in the interest of justice exclude the employer from the trial of the claim

against the third party and may meet the issue of the actionable negligence of the employer to the jury in a separate hearing.

The instruction to which defendants assign error provided as follows:

> Thus, if the negligent act or omission of the agent of the defendant, National Services Incorporated, and of the agent of Champion International Corporation, concurred or joined together to produce the claimed injury, then the conduct of each is a proximate cause of plaintiff's injury and they, defendants, and Champion International Corporation would be jointly and severally liable for all the damages suffered.

Plaintiff argues that "[w]hile the instruction resembles the joint tortfeasor instruction, it in fact makes no explicit reference to such a relationship." However, we conclude that plaintiff's contention is subject to contradiction since the trial court's instruction provided that if the agents' negligent acts "concurred or joined together to produce the claimed injury, then the conduct of each is a proximate cause of plaintiff's injury and they, defendants, and Champion International Corporation *would be jointly and severally liable for all the damages suffered*." (Emphasis added.) Defendants argue that the instruction was prejudicial in that "the jury was led to believe that Champion would share equally in any damages assessed against the defendants." However, it is well established that the term "jointly and severally" implies that one tortfeasor could pay for all of plaintiff's damages: it only opens the *potential for contribution* in a subsequent suit brought by the indemnifying tortfeasor against the other tortfeasor. Additionally, we note that the instruction did not ask the jury to apportion the amount of damages between defendants and Champion. We further note that the third issue specifically asked the jury "[w]hat amount, if any, is plaintiff entitled to recover of the *defendants*?" (Emphasis added.) We conclude that any error arising from the trial court's instruction was harmless. G.S. 1A-1, Rule 61. Accordingly, this assignment of error fails.

### III.

For the reasons stated, we find no error in the trial below.

No error.

Chief Judge ARNOLD and Judge WELLS concur.