LOUISE T. BEAM AND THOMAS ANDREW CARL HALL, TRUSTEE FOR WILLIAM CARL
HALL AND WIFE, HELEN LEE HALL, PLAINTIFFS V. DAVID FRANKLIN KERLEE, DEFENDANT

No. COA94-1123

(Filed 19 September 1995)

**1. Quieting Title § 27 (NCI4th)— marketable title—adverse possession—issues of fact—summary judgment properly denied**

The trial court in an action to quiet title did not err in denying plaintiffs' motion for summary judgment where the pleadings and other documents did not settle the dispute over whether defendant or plaintiffs had marketable record title, and where defendant's averments in answers to plaintiffs' interrogatories were sufficient to support his claim to title by adverse possession.

**Am Jur 2d, Quieting Title and Determination of Adverse Claims §§ 78 et seq.**

**2. Quieting Title § 29 (NCI4th)— claim to marketable record title—directed verdict for plaintiffs properly denied**

The trial court did not err in denying plaintiffs' motion for directed verdict on defendant's counterclaim to quiet title where the deeds and expert testimony presented by defendant constituted more than a scintilla of evidence to support his theory that he had marketable record title to the property under the Marketable Title Act.

**Am Jur 2d, Quieting Title and Determination of Adverse Claims §§ 78 et seq.**

**3. Adverse Possession § 23 (NCI4th)— adverse possession for twenty years—sufficiency of evidence**

The evidence was sufficient to establish defendant's adverse possession of disputed land for the twenty-year statutory period where it tended to show that defendant, who was forty years old at the time of trial, began to go on the land with his father when he was ten or eleven years old; they hunted and fished on the property, and he continued to do so after his father died; defendant put up no trespassing signs and had been running people off the land for years; and defendant cut out property lines very close to those subsequently located by a surveyor.

**Am Jur 2d, Adverse Possession §§ 318, 319, 321.**

BEAM v. KERLEE

[120 N.C. App. 203 (1995)]

**4. Trial § 624 (NCI4th)— motion to dismiss complaint—granting in jury trial erroneous—error not prejudicial**

Though defendant's motion to dismiss plaintiffs' complaint at the close of plaintiffs' evidence and the court's granting of the motion were improper since this was a jury trial and the proper motion would have been a motion for a directed verdict, such error was harmless in that the jury could not have been influenced by the trial court's dismissal of plaintiffs' case because it never knew the case had been dismissed, and plaintiffs were given an opportunity to rebut defendant's evidence. N.C.G.S. § 1A-1, Rule 41(b).

**Am Jur 2d, Trial §§ 857 et seq.**

**5. Quieting Title § 20 (NCI4th)— admissible and inadmissible evidence—no error**

In an action to quiet title, the trial court did not err in (1) refusing to allow plaintiffs to introduce deeds which were not listed in plaintiffs' pretrial order, since plaintiffs' counsel was able to refer to and use the deeds during his cross-examination of defendant's witnesses; (2) allowing defendant to introduce old maps into evidence and allowing defendant's witness to testify about conclusions drawn from the maps, since the court found the relevancy and materiality of the exhibits were supported by previous testimony not objected to by plaintiffs and defendant's surveyor was presented as an expert witness; (3) allowing defendant to testify he had been "in possession" of the disputed land, since this was based on his experiences on the land and was critical to the determination of the controversy; and (4) refusing to allow plaintiffs to introduce into evidence sketches made by plaintiffs' counsel, since counsel could introduce the sketches only if he planned to testify.

**Am Jur 2d, Quieting Title and Determination of Adverse Claims §§ 78 et seq.**

Appeal by plaintiffs from judgment entered 2 February 1994 by Judge Beverly T. Beal in McDowell County Superior Court. Heard in the Court of Appeals 8 June 1995.

*Carnes, Franklin & Evans, P.A., by Everette C. Carnes, for plaintiff appellants.*

*Stephen R. Little, Attorney, P.A., by Stephen R. Little, for defendant appellee.*

**BEAM v. KERLEE**

[120 N.C. App. 203 (1995)]

COZORT, Judge.

The issue in this case is whether there was sufficient evidence to support the jury's verdict that defendant had superior title to a disputed parcel of land on the grounds defendant had marketable record title to the land and, alternatively, had acquired title to the land by adverse possession.

Plaintiffs bring forward on appeal fifteen assignments of error. Those assignments raise seven major issues, alleging the trial court committed reversible error by (1) denying plaintiffs' motions for summary judgment and for directed verdict; (2) dismissing plaintiffs' case at the close of plaintiffs' evidence; (3) refusing to permit plaintiffs to introduce into evidence exhibits that were not listed in the pretrial order; (4) permitting defendant to introduce old maps into evidence and allowing defendant's witness to testify about conclusions drawn from the maps; (5) permitting defendant to testify he had been "in possession" of the disputed land; (6) refusing to admit sketches drawn by plaintiffs' counsel into evidence; and (7) refusing to grant plaintiffs' motion for a new trial.

We find there was sufficient evidence to support the jury's verdict and find no reversible error by the trial court. The facts and procedural history follow.

Plaintiffs filed an action on 14 July 1992 to quiet title to a parcel of land lying partly in Old Fort Township, McDowell County, and partly in Broad River Township, Buncombe County. In their complaint, plaintiffs claimed to have marketable record title to the disputed land. Plaintiffs traced their chain of title to a deed from John M. Houck to E.M. Crawford recorded 18 December 1917 on page 40 of McDowell County Deed Book 52. Plaintiffs traced the conveyances leading to their deed as follows:

1. E. M. Crawford to Ellen J. Crawford by 20 December 1917 deed, recorded in McDowell County Deed Book 51 on page 581.

2. Ellen J. Crawford to W. B. Harris and Robert McCraw, by 9 May 1953 deed, recorded in McDowell County Deed Book 125 on page 12.

3. Willard B. Harris and wife, and Robert McCraw and wife, to Joe M. Spainhour and others, by 21 December 1964 deed, recorded in McDowell County Deed Book 181 on page 419.

4. Mary N. Spainhour and others to Hugh Beam and wife, Louise Beam, by 17 August 1967 deed, recorded in McDowell County Deed Book 235 on page 30.

5. Louise T. Beam, widow, to W. C. Hall and wife, Helen Hall, by 19 October 1974 deed, recorded in McDowell County Deed Book 243 on page 378, conveying undivided one-half interest in said land.

6. W. C. Hall and wife, Helen Lee Hall, to Thomas Andrew Carl Hall, trustee, by 23 September 1986 deed, recorded in McDowell County Deed Book 359 on page 679, conveying said undivided one-half interest.

Plaintiffs contended a 16 April 1992 general warranty deed from Grace J. Kerlee to defendant recorded in McDowell County Deed Book 437 on page 758 and in Buncombe County Deed Book 1692 on page 271 covered some or all of the land plaintiffs claimed. Plaintiffs argued defendant did not have title to the land because the defendant's grantor did not own the land. Plaintiffs requested that the trial court declare the 16 April 1992 deed to defendant void.

Defendant counterclaimed to quiet title, asking the court to declare him owner of the disputed land. Defendant denied in his answer that plaintiffs had marketable title to the land described in the complaint. Defendant claimed to own a parcel of land lying in Old Fort and Crooked Creek Townships, McDowell County, and in Broad River Township, Buncombe County. Defendant claimed to have marketable record title to the land and traced the conveyances leading to his deed as follows:

1. W. J. Souther and wife, Nancy Souther, and J.H. Lytle to C.P. Kerlee and wife, Mary E. Kerlee, by 24 February 1898 deed recorded in McDowell County Deed Book 26 on page 382. The land described in this deed formerly belonged to Noah Souther.

2. Carl Kerlee, Jr., and Daniel Kerlee, attorneys in fact for the heirs of C.P. Kerlee and Mary Kerlee, deceased, to Leander Kerlee by 31 October 1950 deed recorded in McDowell County Deed Book 134 on page 444.

3. Leander Kerlee and wife, Blanche Kerlee, to Daniel Kerlee and wife, Grace Kerlee, by 31 November 1950 deed recorded in McDowell Deed Book 113 on page 538.

4. Grace J. Kerlee, widow of Daniel Kerlee, and Paul Kerlee to David Franklin Kerlee by 24 September 1991 quitclaim deed recorded in McDowell County Deed Book 429 on page 430 and in Buncombe County Deed Book 1667 on page 169.

5. Grace J. Kerlee, widow of Daniel Kerlee, to David Franklin Kerlee by 16 April 1992 general warranty deed recorded in McDowell County Deed Book 437 on page 758 and in Buncombe County Deed Book 1692 on page 271.

Defendant then amended the counterclaim, claiming he had title to the disputed land because he had possessed it under color of title for seven years and, alternatively, that he and his predecessors in title adversely possessed the land for more than twenty years.

Plaintiffs filed a motion for summary judgment on 28 September 1993, and the trial court denied the motion. On 24 January 1994, the trial court entered a pretrial order agreed to by the parties. Section (8) of that order stipulated:

> Opposing counsel has seen all of the exhibits and has been furnished, or will be before this case is called for trial, a copy of each exhibit identified by the Defendant, except for those items for which copying is not practical.

The case was tried before a jury. At the close of plaintiffs' case and outside the presence of the jury, defendant made a motion to dismiss the complaint. The judge allowed the motion, stating that plaintiffs had produced no evidence that the parcel of land they contended to own was the same parcel of land defendant contended he owned. The jury was not informed of this ruling, and the trial continued as to the defendant's counterclaim.

Defendant testified his father took him on to the disputed land when he was about ten or eleven years old. He stated he and his father went on the property numerous times trying to locate property lines. They also hunted and fished on the land. Defendant testified: "My family has used that piece of property for thirty plus years."

Defendant said he began posting the property with no trespassing signs in 1991, when he decided to build a home on the land and move his family there. Before hiring a surveyor to get a legal description of the land and define its acreage, defendant and a friend cut a path around the property where defendant believed the boundary lines were located. Phillip Reese, a Registered Land Surveyor, testified that the 404 acres he surveyed as Kerlee land reflected the remaining property of C.P. Kerlee, which was conveyed through a series of deeds to the defendant. The surveyor testified he formed his conclusions by relating the written information from a property owner's

deed and information from deeds of adjoining property owners to the physical information on the ground.

At the close of defendant's evidence, the trial judge reinstated the plaintiffs' case on the grounds that it would be unfair to allow defendant to proceed with his marketable record title action without giving plaintiffs an opportunity to have the jury consider their marketable record title claim. The jury was not in the courtroom when plaintiffs' case was reinstated. Plaintiffs were given the opportunity to further cross-examine defendant and defendant's surveyor.

The jury was asked to render its verdict by answering issues relating to plaintiffs' marketable record title claim, defendant's marketable record title claim, defendant's adverse possession claim, and defendant's color of title claim. The jury found that plaintiff did not have marketable record title to the property, that defendant did have marketable record title to the property, and that defendant had acquired title to the land by adverse possession for twenty years. Plaintiffs made a motion for judgment notwithstanding the verdict and a motion to set aside the verdict. The trial court denied plaintiffs' motion. Plaintiffs appealed to this Court.

[1] We first consider plaintiffs' argument that the trial court erred in denying their motion for summary judgment. Our standard of review for summary judgment is whether there is any genuine issue of material fact and whether the movant is entitled to judgment as a matter of law. *Aetna Casualty & Surety Co. v. Welch*, 92 N.C. App. 211, 212, 373 S.E.2d 887, 888 (1988). In ruling on a summary judgment motion, the court should consider the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits. *See Davis v. Town of Southern Pines*, 116 N.C. App. 663, 665, 449 S.E.2d 240, 242 (1994), *disc. review denied*, 339 N.C. 737, 454 S.E.2d 648 (1995). The party making the motion bears the burden of showing summary judgment is appropriate. *Leake v. Sunbelt Ltd. of Raleigh*, 93 N.C. App. 199, 201, 377 S.E.2d 285, 287, *disc. review denied*, 324 N.C. 578, 381 S.E.2d 774 (1989). Furthermore, in ruling on the motion, the trial court must view the evidence presented by both parties in the light most favorable to the nonmoving party. *Davis*, 116 N.C. App. at 666, 449 S.E.2d at 242. Summary judgment is proper when it appears that even if the facts as claimed by the nonmoving party are taken as true, there can be no recovery. *Hudson v. All Star Mills*, 68 N.C. App. 447, 450, 315 S.E.2d 514, 516, *disc. review denied*, 311 N.C. 755, 321 S.E.2d 134 (1984). Summary judgment is also appropriate

BEAM v. KERLEE

[120 N.C. App. 203 (1995)]

when the movant proves an essential element of his opponent's claim does not exist. *Leake*, 93 N.C. App. at 201, 377 S.E.2d at 287. Summary judgment has been called a "drastic remedy" to be used to save time and money for litigants in cases where there is no dispute as to any material fact. *See Hayes v. Turner*, 98 N.C. App. 451, 456, 391 S.E.2d 513, 516 (1990).

Both parties claimed to own the land through a chain of title which could be traced back for the thirty years required to establish marketable record title under N.C. Gen. Stat. § 47B-2 (1984). Plaintiffs contend defendant's claim for marketable record title was unsubstantiated based on their interpretation of the property descriptions in the deeds that made up defendant's chain of title. We disagree. Defendant supported his claim by referring to the map drawn by a registered land surveyor who studied the deeds, the physical layout of the land, and the deeds of adjoining landowners and concluded that the 404 acres he designated on the map was Kerlee land. The pleadings and other documents did not settle the dispute over whether defendant or plaintiffs had marketable record title, and summary judgment was properly denied on these grounds.

In answering interrogatories posed by plaintiffs, defendant supported his claim to title by adverse possession. Defendant stated his father and other relatives had walked the property for more than fifty years, hunting, fishing and otherwise using the property. Defendant stated he had used the property in this same way. Defendant also stated he had posted no trespassing signs and streamers and flags around the boundary lines of the property. Defendant talked with other landowners about access to his property and with people interested in buying timber off the land. These averments, which must be taken as true, are sufficient to support defendant's claim to title by adverse possession. Plaintiffs' summary judgment motion was properly denied on these grounds.

Similarly, defendant's claim to possession by adverse possession for seven years under color of title should not have been disposed of by plaintiffs' summary judgment motion. The deeds defendant included in his chain of title were sufficient evidence of color of title to withstand the plaintiffs' summary judgment motion.

We thus find there were material issues of fact in dispute when plaintiffs moved for summary judgment. When viewing the evidence in the light most favorable to the defendant, it is clear that defendant

put forward sufficient evidence to withstand plaintiffs' motion. We affirm the trial court's denial of that motion.

**[2]** Plaintiffs assign as error the trial court's denial of their motion for a directed verdict on defendant's counterclaim at the close of the evidence. A directed verdict is properly granted where it appears, as a matter of law, that the nonmoving party cannot recover upon any view of the facts which the evidence reasonably tends to establish. *Sheppard v. Zep Manufacturing Co.*, 114 N.C. App. 25, 30, 441 S.E.2d 161, 164 (1994). Under this standard, this Court must determine whether defendant's evidence, when considered in the light most favorable to defendant, was legally sufficient to withstand plaintiffs' motion for a directed verdict as to any of defendant's claims. *See Sheppard*, 114 N.C. App. at 30, 441 S.E.2d at 164. "The motion for directed verdict should be denied if there is more than a scintilla of evidence supporting each element of the nonmovant's case." *Pridgen v. Shoreline Distributors, Inc.*, 114 N.C. App. 94, 96, 441 S.E.2d 184, 186, *disc. review denied*, 338 N.C. 669, 453 S.E.2d 180 (1994).

Defendant based his ownership of the disputed property on three theories: marketable record title, adverse possession for twenty years, and adverse possession under color of title for seven years. In order to prove he had title to the land under the Real Property Marketable Title Act, N.C. Gen. Stat. § 47B-2 (1984), defendant had to establish: (1) that defendant, alone or together with his predecessors in title, was vested with an estate in real property which had been of record for at least thirty years; (2) the public record showed a title transaction at least thirty years old which purported to vest title in defendant or some other person from whom, by one or more title transactions, the property had passed to defendant; and (3) that nothing appeared of record to divest defendant of the estate.

Defendant testified as to five deeds he claimed formed his chain of title to the land, the oldest of which was the 24 February 1898 deed from W.J. Souther and wife, Nancy Souther, and J.H. Lytle to C.P. Kerlee (defendant's exhibit 1). These lands were formerly owned by Noah Souther, who was deceased at the time of the 1898 deed. Defendant's exhibit 2 was a 31 October 1950 deed from Carl Kerlee, Jr., and Daniel Kerlee, attorneys in fact for the heirs of C.P. Kerlee and Mary Kerlee, to Leander Kerlee. Defendant's exhibit 3 was a 1 November 1950 deed from Leander Kerlee and wife, Blanche Kerlee, to Daniel Kerlee and wife, Grace J. Kerlee. These deeds satisfied the first requirement of the Marketable Title Act by virtue of being title

transactions affecting the property that took place more than thirty years before the filing of this action.

Defendant's exhibit 4 was a non-warranty deed from Grace Kerlee to defendant, and exhibit 5 was a warranty deed from Grace Kerlee to defendant, purporting to convey the same property. Considered together, these five exhibits satisfy the second element of the Marketable Title Act by vesting title more than thirty years before the action was filed in one of defendant's predecessors in title. As to the third requirement—that nothing of record appears that divests him of the property he claims—defendant offered the testimony of Surveyor Phillip Reese to demonstrate the land defendant claimed had not been conveyed away. The surveyor's map states as its source of title:

> The 404.0 ACRES are all the remaining property as set forth in that certain deed dated February 24, 1898 from W.J. Souther, et al to C.P. Kerlee and wife Mary E. Kerlee as recorded in Deed Book 26, Page 382 (McDowell Co.), specifically Tracts 10, 11 and all Tracts thereafter to the terminus of said description, less and excepting all Tracts or portions thereof previously conveyed.

In response to cross-examination by plaintiffs, the surveyor testified that it would be a "massive undertaking" to examine each land tract obtained by Noah Souther and determine every out-conveyance, overlap and double grantage of the property. The surveyor further testified:

> Based upon all the adjoining properties, the terminology within those deeds that that was Noah Souther land. Noah Souther evolved into the Kerlee chain.
>
> . . . .
>
> It's not an assumption. It's deriving the terminology of the deeds based upon physically surveying the subject property and how adjoining properties are related to it.

The deeds and expert testimony presented by defendant constitute more than a scintilla of evidence to support his theory that he has marketable record title to the property under the Marketable Title Act.

[3] Next, plaintiffs contend their motion for a directed verdict should have been granted as to defendant's claim to title by more than twenty years of adverse possession and as to defendant's claim that he acquired title by seven years of adverse possession under color of

title. To acquire title to land by adverse possession, the claimant must show actual, open, hostile, exclusive, and continuous possession of the land claimed for twenty years under known and visible lines and boundaries. *Curd v. Winecoff*, 88 N.C. App. 720, 722, 364 S.E.2d 730, 732 (1988); N.C. Gen. Stat. § 1-40 (1983). Successive adverse users in privity with prior adverse users can tack successive adverse possessions of land so as to aggregate the prescriptive period of twenty years. *Dickinson v. Pake*, 284 N.C. 576, 585, 201 S.E.2d 897, 903 (1974). It is permissible under the legal principle of tacking to tie the possession of an ancestor to that of the heir when there was no hiatus or interruption in the possession. *International Paper Co. v. Jacobs*, 258 N.C. 439, 444, 128 S.E.2d 818, 822 (1963).

Plaintiffs claim defendant failed to show he possessed the land for the twenty-year statutory period either through defendant's occupation of land or through tacking defendant's possession to his father's possession. Plaintiffs further claim defendant's possession was not exclusive and adverse as to all others or under known and visible lines and boundaries. We disagree.

Defendant, who was forty years old at the time of trial, testified his father began taking him on the land when defendant was about ten or eleven years old. He stated he and his father had hunted and fished on the property, and that he had continued to use the land on his own after his father's death. "I have used this property very extensively since I was a kid," defendant testified. Defendant testified his family had used the property for more than thirty years: "[We] just used the property as Kerlee property just on and on and on any way you could a piece of property." Defendant stated he and a friend spent six months cutting out property lines before he hired Phillip Reese to survey the land. Considered in the light most favorable to defendant, this evidence was sufficient to establish possession of the land for the twenty-year statutory period.

When questioned about other people's use of the land, defendant testified that he put up no trespassing signs in 1991 and asked hunters he found on the property to leave. Defendant said he had been running people off the land long before he posted the property—"for twenty plus years." This evidence was sufficient to support defendant's claim that his possession of the land was exclusive and adverse as to all others.

**BEAM v. KERLEE**

[120 N.C. App. 203 (1995)]

To substantiate a claim for title to land by adverse possession, the claimant must show he possessed the land under known and visible boundaries such as to apprise the true owner and the world of the extent of the possession claimed. *McDaris v. Breit Bar "T" Corp.*, 265 N.C. 298, 303, 144 S.E.2d 59, 63 (1965). Defendant showed that he knew the boundary lines of the property by cutting out the lines before he hired a surveyor. Defendant testified: "[T]he Surveyor didn't have to locate any lines at all. I was very close on my cuts. . . . The most, I guess, I was off was maybe 20 foot . . . ." Defendant testified he and his father located the boundaries of the property when he was between ten and fifteen years old. This testimony provides evidence of known and visible boundaries sufficient to withstand plaintiffs' motion for a directed verdict.

Plaintiffs also claim the trial court should have granted their motion for directed verdict as to defendant's claim that he acquired title to the land by seven years' adverse possession with color of title under N.C. Gen. Stat. § 1-38 (1983). We need not consider this issue. Even if the trial court had erred, any such error would have been harmless because the jury's verdict did not address this issue. We find the trial court did not err in refusing to grant plaintiffs' motion for directed verdict.

[4] Plaintiffs next contend the trial court erred in dismissing plaintiffs' case at the close of plaintiffs' evidence. After the plaintiffs presented their evidence, the defendant made a motion to dismiss the plaintiffs' complaint. The proper motion for the defendant to make at this stage of the proceedings would have been a motion for a directed verdict rather than a motion to dismiss the complaint. N.C. Gen. Stat. § 1A-1, Rule 41(b) (1990) provides that a party may move for an involuntary dismissal for failure of the plaintiff to prosecute or comply with the rules of civil procedure or any order of the court. Only in an action tried without a jury may the defendant move for an involuntary dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. *Id.* Since this case was a jury trial, the defendant's motion to dismiss was improper as was the court's granting of the motion. We find this error harmless.

The burden is on the appellant to show the error probably influenced the jury against him. *Freeman v. Preddy*, 237 N.C. 734, 736, 76 S.E.2d 159, 160 (1953). The error must be material and prejudicial, denying the appellant some substantial right. *Id.* "[A]n error cannot be regarded as prejudicial to a substantial right of a litigant unless

there is a reasonable probability that the result of the trial might have been materially more favorable to him if the error had not occurred." *Id.*

The trial court dismissed this case out of the hearing of the jury and proceeded with defendant's counterclaim evidence. When the court reinstated plaintiffs' case at the close of defendant's evidence, plaintiffs were given an opportunity to rebut defendant's evidence through recross-examination. The jury could not have been influenced by the trial court's dismissal of plaintiffs' case because it never knew the case had been dismissed, and plaintiffs were given an opportunity to rebut defendant's evidence. We do not find a reasonable probability that the jury's verdict would have differed if the error had not occurred.

**[5]** Plaintiffs next contend the trial court erred in refusing to allow plaintiffs to introduce into evidence exhibits which were not listed in plaintiffs' pretrial order. Whether to admit evidence not listed in a pretrial order is entrusted to the discretion of the trial court. *Pittman v. Barker*, 117 N.C. App. 580, 588, 452 S.E.2d 326, 331 (1995). The trial court's decision will not be reviewed unless an abuse of discretion is shown. *Id.* In *Pittman*, the trial court elected to admit deeds into evidence which were not listed in the pretrial order because the deeds were not discovered until the trial was underway. The plaintiffs in the case at hand sought to admit deeds into evidence which plaintiffs knew of before trial along with sketches of the disputed land made by plaintiffs' counsel. In addition, plaintiffs' counsel was able to refer to and use the deeds in question during his cross-examination of defendant's witnesses, thus eliminating the possibility of prejudice to plaintiffs by the exclusion of the deeds themselves as exhibits. We find the trial court did not abuse its discretion in refusing to admit this evidence.

Plaintiffs next contend the trial court committed reversible error by allowing defendant to introduce old maps into evidence and allowing defendant's witness to testify about conclusions drawn from the maps. The first map in question (defendant's exhibit 21) is a survey prepared in 1952 by a registered land surveyor and recorded in the office of the Register of Deeds for McDowell County in Map Book 2 at page 37. This map was listed in the pretrial order. Plaintiffs stipulated the exhibits listed by defendant in that order were genuine and, if relevant and material, would be received into evidence without further identification or proof. Plaintiffs objected to the maps on the

ground that private maps may be used only when a witness testifies to their correctness from first-hand knowledge. *See Cutts v. Casey*, 278 N.C. 390, 413, 180 S.E.2d 297, 308 (1971). Plaintiffs contended exhibit 21 was hearsay since it had not been "proven by someone, a surveyor or someone connected with the survey." In ruling the survey admissible, the trial court found the relevancy and materiality of the exhibit supported by previous testimony not objected to by plaintiffs. Since the parties had already agreed the exhibit was genuine, the trial court found no basis to refuse to admit the map into evidence. Plaintiffs objected on the same ground to exhibit 22, a 1953 survey of property adjoining the disputed land and prepared by the same surveyor. We find, for the same reasons, the trial court did not err in admitting this map into evidence. N.C. Gen. Stat. § 1A-1, Rule 16 (1990) provides that a pretrial order controls the subsequent course of the action unless it is modified at trial to prevent manifest injustice. Plaintiffs could have raised the issue of the maps as hearsay evidence before they signed the pretrial order. In fact, plaintiffs did object in the order to exhibits 1, 5, and 6 and did not stipulate these exhibits were genuine.

Plaintiffs further contend it was reversible error to permit defendant's surveyor to testify about conclusions he drew from the 1952 survey. We disagree. The trial court permitted the surveyor to testify about these conclusions after the defendant presented him as an expert witness. An expert witness is a witness whose study or experience, or both, makes the witness better qualified than the jury to form an opinion on a particular subject. *Federal Paper Board Co. v. Kamyr, Inc.*, 101 N.C. App. 329, 334, 399 S.E.2d 411, 415, *disc. review denied*, 328 N.C. 570, 403 S.E.2d 510 (1991). According to Rule 702 of the Evidence Code, N.C. Gen. Stat. § 8C-1 (1992), an expert may testify in the form of an opinion if the testimony will help the trier of fact understand the evidence. Furthermore, testimony in the form of an opinion is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact. *In re Wheeler*, 87 N.C. App. 189, 196, 360 S.E.2d 458, 462 (1987); N.C. Gen. Stat. § 8C-1, Rule 704 (1992). Since the surveyor was an expert in land survey and his testimony may have helped the jury understand conclusions which could be drawn from the survey maps, his testimony was properly admitted.

Plaintiffs next contend it was reversible error for the trial court to permit defendant to testify he had been "in possession" of the disputed land. We find no error. A witness is permitted to tell what use

has been made of or what acts of ownership have been exercised over property. *Memory v. Wells*, 242 N.C. 277, 280, 87 S.E.2d 497, 501 (1955). It is for the jury to say, under proper instructions, whether such use or acts constitute open, notorious and adverse possession. *Id.* While a witness may not testify as to who *owns* the land, it is permissible for the witness to testify as to who has been in *possession* of the land for the described period. *See Mallett v. Huske*, 262 N.C. 177, 185, 136 S.E.2d 553, 558 (1964). Rule 701 of the Evidence Code, N.C. Gen. Stat. § 8C-1, limits lay witness's testimony in the form of opinions or inferences to matters that are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of this testimony or the determination of a fact in issue. Since the defendant, as his own witness, testified he was in *possession* of the property (not that he *owned* it or had acquired *title* by adverse possession), and this testimony was based on his experiences on the land and was critical to the determination of the controversy before the trier of fact, such testimony was properly admitted.

Plaintiffs next argue the trial court committed reversible error in refusing to allow plaintiffs to introduce into evidence sketches made by plaintiffs' counsel. The trial court informed plaintiffs' counsel during trial that he could introduce the sketches only if he planned to testify. Rule 5.2 of the Rules of Professional Conduct of the North Carolina State Bar (1995) provides that a lawyer should not serve as both counsel and witness, except in very limited circumstances. Counsel may testify "as to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his or her firm as counsel in the particular case." This situation did not occur in the case at hand. Had plaintiffs thought it critical to their case to introduce similar sketches into evidence, such sketches could have been performed by a registered land surveyor. The trial court did not abuse its discretion in refusing to admit this evidence.

Plaintiffs last assign as error the trial court's refusal to grant plaintiffs' motion for a new trial and the court's signing of the judgment. The standard of review for a motion for a new trial pursuant to N.C. Gen. Stat. § 1A-1, Rule 59 (1990), is whether the trial court abused its discretion in granting or denying the motion. *Corwin v. Dickey*, 91 N.C. App. 725, 729, 373 S.E.2d 149, 151 (1988), *disc. review denied*, 324 N.C. 112, 377 S.E.2d 231 (1989). Since there was competent evidence to support each element of defendant's claim to title

STATE ex rel. EMPLOYMENT SECURITY COMM. v. HUCKABEE

[120 N.C. App. 217 (1995)]

under the Marketable Title Act and by adverse possession, we find no error. For the same reasons, the trial court did not err in signing the judgment. Furthermore, we have reviewed plaintiffs' remaining assignments of error and find no prejudicial error.

No error.

Judges JOHN and WALKER concur.