LINDA S. LEAKE, DONALD C. KORDICH, RALPH A. CARLEN, CLAIRE R. CARLEN, JOAN FRASER, BRIAN HAILES, MONICA JANET SINCLAIR, LINDA MILLER, BETH ANNE BARBUTI, FREDERICK L. CROOM, JOY CROOM, MARY MARGARET SAWYER, BRUCE WILLIAMSON, CATHERINE R. WILLIAMSON, JOY WEISS, K. RAY ALLEN, AND GEORGE BEDNARZ v. SUNBELT LIMITED OF RALEIGH, HOLLAND GAINES AND S. ALAN GAINES

No. 8810SC473

(Filed 21 March 1989)

1. **Fraud § 12— sale of townhouses—misrepresentation about buffer zone—sufficiency of evidence**

Plaintiffs who bought townhouses allegedly on the basis of false answers given to them by defendants' agents concerning a proposed road and trees behind the property in question were entitled to have their fraudulent misrepresentation claim heard by a jury, and their recovery was not precluded as a matter of law by a plat within their respective chains of title which showed that a proposed thoroughfare was to be built on the adjoining property.

2. **Fraud § 9— housing development—failure to build promised recreational facilities—pleadings insufficient**

The trial court properly granted summary judgment for defendants on plaintiffs' claim of fraudulent misrepresentation by defendants concerning the building of recreational facilities in the housing development where plaintiffs purchased townhouses, since plaintiffs failed to allege that defendants knew when the representations were made that no recreational facilities would be built, and N.C.G.S. § 1A-1, Rule 9(b) requires that fraud be pleaded with particularity.

3. **Unfair Competition § 1— unfair or deceptive trade practice —allegation of intent not required**

Plaintiffs did not need to allege intent in their Chapter 75 claim based on defendants' representations that they would build certain recreational facilities, since intent is irrelevant in a Chapter 75 claim; plaintiffs needed only to show that defendants' actions were unfair or deceptive; defendants' sales representative testified that he told prospective clients that defendants would build the facilities, but he did not explain to every prospective buyer that the building of the facilities

was dependent upon an affirmative vote of the homeowners' association and a concomitant raise in homeowners' association dues; whether the sales representative explained this to plaintiffs was a question of fact for the jury; and the trial court thus erred in granting summary judgment for defendants on the issue of unfair and deceptive trade practices relating to the recreational facilities.

### 4. Trespass § 2— intentional infliction of emotional distress— insufficiency of evidence

The trial court properly entered summary judgment for defendants on plaintiffs' claim for intentional infliction of emotional distress where plaintiffs presented no evidence which showed that defendants *intended* to cause emotional distress in making representations concerning a proposed road and trees behind the property which they sold to plaintiffs.

APPEAL by plaintiffs Barbuti and Fraser and defendants from *Brannon, Judge.* Order entered 10 March 1988 in Superior Court, WAKE County. Heard in the Court of Appeals 3 November 1988.

Plaintiffs allege that agents of the corporation Sunbelt Limited of Raleigh (Sunbelt), through fraudulent misrepresentations, induced them to buy townhouses in a "planned solar townhome community" named Sunscape. Defendants Holland Gaines and S. Alan Gaines are president and secretary respectively of corporate defendant Sunbelt. Each of the plaintiffs bought a townhouse on Sunscape Lane in the Sunscape community. When the plaintiffs each bought their townhomes, a large stand of trees was located about fifty feet behind their homes. The trees were on adjoining land just south of plaintiffs' lots. According to plaintiffs the trees were a major reason for buying because they afforded their individual lots more privacy than other lots within the development. In fact, defendant Holland Gaines told one of his sales representatives that the trees would make those particular townhouses easier to market.

Shortly after the plaintiffs bought their homes they learned that a five lane highway was being built within fifty feet of their homes. As a result of the highway construction, virtually all of the trees behind their homes were bulldozed. Plaintiffs then brought this action for fraud, unfair and deceptive trade practices, and intentional infliction of emotional distress.

After discovery defendants moved for summary judgment. The trial court granted summary judgment against plaintiffs Catherine Williamson and Monica Janet Sinclair because neither of them were grantees of any property at Sunscape. Neither Williamson nor Sinclair appealed. The trial court's order noted that there was no dispute as to material facts and granted summary judgment in favor of defendants against plaintiffs Beth Anne Barbuti (Barbuti) and Joan Fraser (Fraser). Both Barbuti and Fraser appeal. The trial court denied defendants' summary judgment motion as to the remaining thirteen plaintiffs. From this portion of the trial court's order, defendants appeal.

*Thorp, Fuller & Slifkin, by James C. Fuller, Anne R. Slifkin, and Margaret E. Karr, for plaintiff-appellants/appellees.*

*McMillan, Kimzey & Smith, by James M. Kimzey and Katherine E. Jean, for defendant-appellees/appellants.*

EAGLES, Judge.

Plaintiffs Barbuti and Fraser appeal the trial court's order of summary judgment against them. The defendants appeal the trial court's failure to grant their motion for summary judgment against thirteen other plaintiffs. As to plaintiffs Barbuti and Fraser, we affirm in part and reverse in part. Defendants' appeal from denial of their summary judgment motion is interlocutory and, accordingly, is dismissed.

Summary judgment is a drastic remedy. The purpose is to save time and money for litigants in those instances where there is no dispute as to any material fact. *Dendy v. Watkins*, 288 N.C. 447, 219 S.E. 2d 214 (1975). Upon appeal, the standard of review is whether there is a genuine issue of material fact and whether the movant is entitled to judgment as a matter of law. *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971). The movant has the burden of showing that summary judgment is appropriate. *Development Corp. v. James*, 300 N.C. 631, 268 S.E. 2d 205 (1980). Furthermore, in considering summary judgment motions, we review the record in the light most favorable to the nonmovant. *Caldwell v. Deese*, 288 N.C. 375, 218 S.E. 2d 379 (1975). Summary judgment is also appropriate when the movant proves the nonexistence of an essential element of his opponent's claim. *Zimmerman v. Hogg & Allen*, 286 N.C. 24, 209 S.E. 2d 795 (1974).

[1] Plaintiffs Barbuti and Fraser allege fraudulent misrepresentation, intentional infliction of emotional distress, and unfair and deceptive trade practices on the part of the defendants. More specifically, Barbuti and Fraser claim that defendants' agent Tim Blackson (Blackson), a sales representative at Sunscape, lied to them about how close to their property a proposed road was to be built and how a stand of trees would be used to buffer their properties from any future road. They also allege that Blackson misrepresented that certain recreational facilities were to be built by Sunbelt for the homeowners' use. Finally, they argue that these acts constitute unfair and deceptive trade practices as well as an intentional infliction of emotional distress.

Viewed in the light most favorable to plaintiffs Barbuti and Fraser, the evidence shows the following. At his deposition Blackson stated that he had been told by defendant Holland Gaines that Gaines owned the land behind Sunscape on which the trees stand. Gaines further told Blackson that the trees would remain as a buffer from any road that might be built and that the buffer would make those homes easier to market. Sometime later Blackson asked Terry Pope, the sales manager at Sunscape, for more information about the trees. Pope indicated that the buffer of trees would be about one hundred fifty feet deep. Because Blackson was still unsure what to tell prospective clients about the trees, Pope sent him to another development to see how the trees there looked. Pope said that the buffer at Sunscape would be like the other development. The stand of trees between the road and the homes at that development was about one hundred fifty feet deep. After he had seen the other development Blackson told prospective purchasers that if a road was developed behind their properties, it would be a two lane road and there would be trees one hundred fifty feet deep acting as a buffer between the homes and the road.

Blackson also testified that he was to "talk up" the recreational facilities planned for the development. These planned facilities included a tennis court, swimming pool, and clubhouse. Blackson, however, admitted that he did not explain to all his clients that the facilities would be built only with the approval of the homeowners' association or that, in effect, the homeowners would have to raise their association dues to pay for the facilities.

Shirley Collins, another sales agent at Sunscape, stated by affidavit that Holland Gaines instructed her "not to tell prospective

buyers of the proposed thoroughfare unless asked. Further, if asked, [I was] to represent that the road, if ever built, would be quite a distance from the townhomes and that a buffer of trees and landscaping would always remain."

Plaintiff Barbuti stated that she first asked Blackson about the trees behind the property when she was viewing a home different from the one she bought. Blackson told her that the property she bought would extend about fifty feet behind the townhouse. He also said that the Sunscape community owned another one hundred fifty feet beyond that as common property. Blackson pointed out the possibility of a two lane road being built on that adjoining property, but that any road would be about two hundred feet behind the townhomes.

Barbuti later had a second conversation with Blackson in which he confirmed the information he had previously told her. This second conversation with Blackson took place in the Sunscape model home. Blackson used a map hanging on the wall to illustrate his comments. At this time Blackson and Barbuti again discussed the trees behind the lots.

Plaintiff Fraser claimed that she talked to Blackson about the wooded area behind her townhome as being a privacy factor. She thought that the trees might mean that there would be reduced traffic and noise around her home. At her deposition Fraser testified that she was never told that there would be a major road behind her house. She further stated that she also relied on the map in the model which showed that there were trees behind her house with no indication of a road to be built there.

Defendants' sole argument as to the fraudulent misrepresentation claim about the road and trees is that a plat within Barbuti's and Fraser's respective chains of title showed a proposed thoroughfare was to be built on the adjoining property. Defendants contend that this constitutes record notice of the proposed roadway and precludes their recovery as a matter of law. We disagree.

Defendants claim that our decision in *Highway Comm. v. Wortman*, 4 N.C. App. 546, 167 S.E. 2d 462 (1969), directly controls here. We find *Wortman* distinguishable. *Wortman* involved a condemnation proceeding over defendant's property to enable the state to convert a two lane highway to a four lane highway. The issues

there involved the extent of the State's right of way over defendants' property and the amount of compensation due defendants.

The instant case is not a condemnation proceeding concerned with rights of way and compensation. Here the questions are considerably different. The issue before us is whether the false answers given by defendants' agents to Barbuti's and Fraser's questions concerning the proposed road and the trees induced Barbuti and Fraser to purchase the townhouses located at Sunscape Lane. The answers to these questions are not easily found in even a diligent title examination. Accordingly, we hold that whether or not plaintiffs Barbuti's and Fraser's reliance on defendants' statements was reasonable is a jury question.

Moreover, our Supreme Court has stated that where a seller makes a representation to a prospective purchaser to induce the purchaser to buy and the purchaser relies upon the representation in making his purchase, it is for the jury to determine whether the purchaser's reliance was reasonable if he could have discovered the representation to be false through a diligent title search. *Fox v. Southern Appliances*, 264 N.C. 267, 141 S.E. 2d 522 (1965). This rule is an attempt by the courts to suppress fraud and also to discourage negligence on the part of purchasers. *Id.* at 272, 141 S.E. 2d at 526; *see also Kleinfelter v. Developers, Inc.*, 44 N.C. App. 561, 261 S.E. 2d 498 (1980).

Plaintiffs Barbuti and Fraser next allege that defendants' acts constitute unfair and deceptive trade practices in violation of G.S. 75-1.1. Our Supreme Court has stated that "[p]roof of fraud would necessarily constitute a violation of the prohibition against unfair and deceptive acts." *Hardy v. Toler*, 288 N.C. 303, 309, 218 S.E. 2d 342, 346 (1975). Because of our ruling on the previous fraud issue, summary judgment may not be granted on plaintiffs' claim that defendants' representations concerning the trees constitute a Chapter 75 violation.

[2]   Plaintiffs Barbuti and Fraser further allege a fraudulent misrepresentation by defendants concerning the building of recreational facilities at Sunscape. This representation did not concern a past or existing fact. Normally, a promissory misrepresentation will not support an allegation of fraud. *Johnson v. Insurance Co.*, 300 N.C. 247, 266 S.E. 2d 610 (1980). However, when a promissory misrepresentation is made with an intent to deceive the purchaser

LEAKE v. SUNBELT LTD. OF RALEIGH

[93 N.C. App. 199 (1989)]

and at the time of making the misrepresentation the defendant has no intention of performing his promise, fraud may be found. *Id.*

Defendants contend that plaintiffs Barbuti and Fraser failed to properly plead each of the essential elements of fraud in their fraud claim concerning the building of recreational facilities. Specifically, defendants argue that Barbuti and Fraser failed to allege that defendants knew when the representations were made that no recreational facilities would be built. We agree. Rule 9(b) of the North Carolina Rules of Civil Procedure requires that fraud be pleaded with particularity. Since plaintiffs Barbuti and Fraser failed to allege defendants' intent at the time the representations were made, we affirm that portion of the trial court's order granting summary judgment for defendants on the fraudulent misrepresentation of recreational facilities claim.

[3] On the other hand, plaintiffs Barbuti and Fraser need not allege intent in their Chapter 75 claim based on defendants' representations that they would build certain recreational facilities. Intent is irrelevant in a Chapter 75 claim. *Marshall v. Miller*, 302 N.C. 539, 276 S.E. 2d 397 (1981). Plaintiffs need only show that defendants' actions were "unfair or deceptive acts or practices in or affecting commerce." G.S. 75-1.1.

The *Marshall* Court explained that whether a practice is unfair or deceptive depends upon the particular facts of each case. Here Blackson testified that he told prospective clients that defendants would build a swimming pool, tennis court, and clubhouse. He did not, however, explain to every prospective buyer that the building of these facilities was dependent upon an affirmative vote of the homeowners' association and a concomitant raise in homeowners' association dues. Whether Blackson explained this to plaintiffs Barbuti and Fraser is a question of fact for the jury. Accordingly, we reverse that portion of the trial court's order granting summary judgment for defendants on the issue of unfair and deceptive trade practices relating to the recreational facilities.

[4] Plaintiffs Barbuti's and Fraser's final claim is that defendants' conduct amounts to an intentional infliction of emotional distress. We disagree.

The Supreme Court in *Dickens v. Puryear*, 302 N.C. 437, 453, 276 S.E. 2d 325, 335 (1981), noted that through a motion for summary judgment a defendant may force plaintiff to produce a forecast

of evidence showing that plaintiff can make a *prima facie* case at trial. For a claim of intentional infliction of emotional distress a *prima facie* case consists of "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." *Id.* at 452, 276 S.E. 2d at 335.

Defendants contend that their evidence in support of its summary judgment motion shows that plaintiffs Barbuti and Fraser cannot demonstrate that defendants intended to cause them emotional distress. Even when viewing the record in the light most favorable to plaintiffs Barbuti and Fraser, we hold that they have presented no evidence which shows that defendants *intended* to cause emotional distress. Accordingly, we affirm this portion of the trial court's order.

Defendants appeal the trial court's denial of their summary judgment motion as to the other thirteen plaintiffs. We dismiss this appeal as interlocutory. *Waters v. Personnel, Inc.*, 294 N.C. 200, 240 S.E. 2d 338 (1978). We further note that the trial court's order does not affect a substantial right because avoiding trial on the merits is not a substantial right. *Horne v. Nobility Homes, Inc.*, 88 N.C. App. 476, 363 S.E. 2d 642 (1988).

In summary, we affirm the trial court's order of summary judgment against plaintiffs Barbuti and Fraser on their claims of intentional infliction of emotional distress and fraudulent misrepresentations concerning the construction of recreational facilities at Sunscape. We reverse and remand that portion of the trial court's order granting summary judgment against plaintiffs Barbuti and Fraser on their remaining claim of fraudulent misrepresentation and both claims for unfair and deceptive trade practices in violation of Chapter 75. We dismiss defendants' appeal as interlocutory.

As to plaintiffs' appeal — affirmed in part; reversed and remanded in part.

As to defendants' appeal — dismissed.

Judges BECTON and GREENE concur.