NORTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, INC., PLAINTIFF
    v. TERRY DAVIS ARMWOOD, JR., TERRY DAVIS ARMWOOD, SR., INDIVIDUALLY
    AND AS PARENT AND GUARDIAN FOR TERRY DAVIS ARMWOOD, JR., RAMONA ARMWOOD,
    INDIVIDUALLY AND AS PARENT AND GUARDIAN FOR TERRY DAVIS ARMWOOD, JR., JIMMY
    LEE BEST, AND STELLA H. BOSTIC, DEFENDANTS

No. COA06-176

(Filed 16 January 2007)

**Insurance— not-for-hire commercial vehicle—minimum
amounts—read into policy**

The provisions of N.C.G.S. § 20-309(a1) are inserted into
every insurance policy issued for not-for-hire commercial ve-
hicles. The trial court here did not err by granting summary judg-
ment against the insurer in an action involving an injury suffered
by a child as he left a church bus, so that the policy was reformed
to include that statutory minimum coverage of $750,000.00.

Judge HUNTER dissenting.

Appeal by plaintiff from judgment entered 13 July 2005 by Judge
Howard E. Manning, Jr. in Wake County Superior Court. Heard in the
Court of Appeals 20 September 2006.

*Young, Moore & Henderson P.A., by R. Michael Strickland and
Glenn C. Raynor, for plaintiff-appellant.*

*Law Offices of Frank A. Cassiano, by John K. Bramble and
Frank A. Cassiano, for defendants-appellees.*

CALABRIA, Judge.

North Carolina Farm Bureau Mutual Insurance Company, Inc.
("Farm Bureau") appeals from an order granting summary judgment
entered in favor of defendants on the issue of the minimum amount
of liability coverage required in an insurance policy for a not-for-hire
commercial vehicle. We affirm.

On 7 October 2001, eight-year-old Terry Davis Armwood, Jr.
("T.J.") was injured when he was struck by a vehicle after exiting a
1974, 30-passenger bus owned and operated by Jimmy Lee Best
("Best") and insured by a policy issued by Farm Bureau. Best pur-
chased the policy on 4 June 2001 from Stella Bostic ("Bostic"). When
Bostic sold the policy to Best, she offered liability amounts providing
$750,000.00 in coverage per accident with $5,000.00 for medical pay-

ments per accident and Uninsured/Underinsured Motorist Coverage of $750,000.00. When Best refused the amounts offered, Bostic crossed through the original liability amounts and changed the policy limits to $50,000/$100,000/$25,000 per accident, $1,000 for medical payments, and Uninsured/Underinsured Motorist Coverage of $50,000/$100,000/$25,000, per Best's request.

After the accident, Terry Davis Armwood, Sr. and Ramona Armwood (collectively "the Armwoods") filed a claim with Farm Bureau on behalf of their son, T.J. Farm Bureau offered to settle the claim for $50,000.00, the limit of Best's insurance policy. The Armwoods rejected Farm Bureau's settlement offer and demanded damages in excess of the $50,000.00 policy limit. On 30 October 2003, Farm Bureau filed a declaratory relief action requesting the Wake County Superior Court to determine the scope and amount of coverage provided by Farm Bureau under the policy for any damages caused by the 7 October 2001 accident. Farm Bureau, the Armwoods, and Bostic filed motions for summary judgment. The court granted Bostic's summary judgment motion dismissing all claims against her. The court also granted the Armwoods' summary judgment motion to the extent that the insurance policy was "reformed" to reflect a minimum coverage of $750,000.00 and denied Farm Bureau's motion for summary judgment. Farm Bureau appeals the order granting summary judgment in favor of the Armwoods and denying Farm Bureau's summary judgment motion. We affirm.

Our standard of review for an order granting summary judgment is *de novo. Stafford v. County of Bladen,* 163 N.C. App. 149, 151, 592 S.E.2d 711, 713 (2004), *appeal dismissed by,* 358 N.C. 545, 599 S.E.2d 409 (2004). Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Leake v. Sunbelt, Ltd. of Raleigh,* 93 N.C. App. 199, 201, 377 S.E.2d 285, 287 (1989). "[I]n considering summary judgment motions, we review the record in the light most favorable to the non-movant." *Id.* "When the facts of a case are undisputed, construction and application of an insurance policy's provisions to those facts is a question of law." *McGuire v. Draughon,* 170 N.C. App. 422, 424, 612 S.E.2d 428, 430 (2005).

This case presents an issue of first impression: When a passenger bus transports passengers without requiring payment for services, should the insured or the insurer bear the responsibility of including the minimum statutory requirements of N.C. Gen. Stat. § 20-309(a1)

in the liability policy if the bus is classified as a not-for-hire commercial vehicle?

Farm Bureau contends the owner is responsible for ensuring that liability coverage meets the minimum statutory requirements.[1] Farm Bureau argues that because N.C. Gen. Stat. § 20-309(a1) specifically states that the *owner* shall have financial responsibility, it is on the owner of a vehicle to obtain the appropriate level of liability insurance. The Armwoods contend that Best charged money to transport children in addition to the use of the bus for church purposes and therefore, the mandatory coverage for the bus was the coverage required for a passenger bus for-hire and should have exceeded $750,000.00.

The basic rule of statutory interpretation is that the intent of the Legislature controls. *Campbell v. First Baptist Church*, 298 N.C. 476, 484, 259 S.E.2d 558, 564 (1979). This intent may be determined by considering the language of the statute, the spirit of the act, and what the act seeks to accomplish. *Taylor v. Taylor*, 343 N.C. 50, 56, 468 S.E.2d 33, 37 (1996). "The purpose of [The Financial Responsibility Act of 1957] is to assure the protection of liability insurance, or other type[s] of established financial responsibility, up to the minimum amount specified in the act, to persons injured by the negligent operation of a motor vehicle upon the highways of this State." *Pearson v. Nationwide Mutual Ins. Co.*, 325 N.C. 246, 253, 382 S.E.2d 745, 748 (1989). In order to effectuate the purpose of the Financial Responsibility Act of 1957, "the provisions [of the Act] must be read into insurance policies and [must be] construed liberally." *Id.*

Section 20-309 of the North Carolina General Statutes addresses the financial responsibility required for registration of vehicles. It reads in pertinent part:

(a) No motor vehicle shall be registered in this State unless the owner at the time of registration has financial responsibility for the operation of such motor vehicle, as provided in this Article. The owner of each motor vehicle registered in this State shall maintain financial responsibility continuously throughout the period of registration.

(a1) An owner of a commercial motor vehicle, as defined in G.S. 20-4.01(3d), shall have financial responsibility for the operation

1. Defendants-appellees asserted during oral arguments that Farm Bureau had issued an MCS-90 Form along with Best's insurance policy. However, this issue was not addressed in defendants-appellees' brief and therefore, will not be considered.

of the motor vehicle in an amount equal to that required for for-hire carriers transporting nonhazardous property in interstate or foreign commerce in 49 C.F.R. § 387.9.

N.C. Gen. Stat. § 20-309 (a) and (a1) (2005). Under § 20-309(a), an owner of a vehicle may not register the vehicle unless the owner has an insurance policy or another type of financial responsibility in place that meets the minimum liability coverage as required by § 20-279.1. Our Courts have consistently held that the minimum liability coverage required by § 20-279.1 is "written into every insurance policy as a matter of law." *Integon Indemnity Corp. v. Universal Underwriters Ins. Co.*, 342 N.C. 166, 168, 463 S.E.2d 389, 390-91 (1995); *McCleod v. Nationwide Mutual Ins. Co.*, 115 N.C. App. 283, 287, 444 S.E.2d 487, 490 (1994). Thus, even though § 20-309(a) requires the owner to obtain financial responsibility in order to register a vehicle, the owner is not responsible for ensuring that the insurance policy contains the minimum liability coverage imposed by statute. The minimum liability coverage is written into each insurance policy as a matter of law. Similarly, § 20-309(a1) requires the owner of a not-for-hire commercial vehicle to obtain an insurance policy or other financial responsibility in order to register the vehicle. It follows that just as the minimum liability coverage requirements for vehicles registered under § 20-309(a) are written into insurance policies as a matter of law, so too are the minimum liability coverage requirements for not-for-hire commercial vehicles registered under § 20-309(a1). In effect, this does not place a burden on either party to ensure that liability coverage meets the minimum statutory requirements, but it inserts the provisions of § 20-309(a1), as a matter of law, into every insurance policy issued for not-for-hire commercial vehicles. *See Integon*, 342 N.C. at 168, 463 S.E.2d at 390-91; *McCleod*, 115 N.C. App. at 287, 444 S.E.2d at 490. Further, writing the minimum liability coverage into insurance policies for vehicles registered under § 20-309(a1) as a matter of law promotes the main purpose of the Financial Responsibility Act—protecting innocent motorists. *See Pearson*, 325 N.C. at 253, 382 S.E.2d at 748.

Farm Bureau argues that N.C. Gen. Stat. § 62-268, which pertains to for-hire commercial vehicles, specifically provides that liability coverage may be obtained through multiple insurance policies. Farm Bureau further argues that because § 62-268 and § 20-309(a1) pertain to commercial vehicles and the only factor that determines which statute applies is whether the commercial vehicle is used for hire, the two statutes should be construed together. Thus, Farm

Bureau argues, § 20-309(a1) allows the owner of a not-for-hire commercial vehicle to obtain the required financial responsibility through multiple insurance policies thereby placing the responsibility to ensure that the minimum coverage has been obtained upon the owner. We disagree.

Basic canons of statutory interpretation provide that "[s]tatutes in *pari materia* are to be construed together, and it is a general rule that the courts must harmonize such statutes, if possible, and give effect to each . . . ." *Faizan v. Insurance Co.*, 254 N.C. 47, 53, 118 S.E.2d 303, 307 (1961). "[A]ll applicable laws on the same subject matter should be construed together so as to produce a harmonious body of legislation, if possible." *Id.*

Section 20-279.21 is part of the Financial Responsibility Act of 1953, and § 20-309(a1) is part of the Financial Responsibility Act of 1957. Both acts pertain to the same subject matter—the financial responsibility of motorists. Thus, "[t]he two acts are to be construed together so as to harmonize their provisions and to effectuate the purpose of the Legislature." *Harrelson v. Insurance Co.*, 272 N.C. 603, 610, 158 S.E.2d 812, 818 (1968). *See also, Odum v. Nationwide Mutual Ins. Co.*, 101 N.C. App. 627, 631, 401 S.E.2d 87, 90 (1991) ("The two Acts are complementary and are to be construed in *pari materia* so as to harmonize them and give effect to both.").

In sharp contrast to Farm Bureau's argument, § 62-268 is found under chapter 62—a chapter devoted to an entirely different body of law. Chapter 62 regulates public utilities and contains specific provisions for motor carriers. If the Legislature intended for statutes concerning not-for-hire commercial vehicles to be interpreted in conjunction with statutes concerning for-hire vehicles, it could have included the statutes in the same chapter or referenced the provisions of § 62-268.

Therefore, because § 20-279.21 and § 20-309 have an identical purpose—protecting the innocent from irresponsible drivers—it is proper that these statutes are interpreted in a consistent manner in order to give effect to the intent and purpose of the Legislature. Construing these statutes in *pari materia*, we hold that just as provisions of N.C. Gen. Stat. § 20-279.21 are read into every insurance policy as a matter of law, provisions of N.C. Gen. Stat. § 20-309(a1) are also read into every insurance policy as a matter of law. This is to effectuate the purpose of the Financial Responsibility Act—protect-

ing the innocent from irresponsible motorists. *See Pearson*, 325 N.C. at 253, 382 S.E.2d at 748.

We have considered Farm Bureau's remaining arguments and determined they are without merit. The trial court properly granted the Armwoods' summary judgment motion to the extent that it reformed the insurance policy to include the amount of minimum coverage required by § 20-309(a1), and it properly denied Farm Bureau's summary judgment motion. For the reasons stated herein, we affirm the order of the trial court.

Affirmed.

Judges HUDSON concurs.

Judge HUNTER dissents in a separate opinion.

The Judges participated in this decision and submitted it for filing prior to 1 January 2007.

HUNTER, Judge, dissenting.

Because I disagree with the majority's holding that provisions of N.C. Gen. Stat. § 20-309(a1) should be read into every liability insurance policy on commercial vehicles as a matter of law, I respectfully dissent.

Best purchased a thirty-passenger bus for use in transporting members of his church. In June 2001, he went to plaintiff, an insurer, for liability insurance on the vehicle and was offered an application for a policy containing $750,000.00 in coverage, which he declined. Best then selected the amount of coverage himself—$50,000.00 per person and $100,000.00 per accident—and plaintiff issued a policy in those amounts. Best paid the premiums for the policy and was covered by it in October 2001, when he was involved in the accident at the root of this case in which Terry Armwood, Jr., was injured. Plaintiff sought a declaratory injunction from the trial court that the policy provided coverage of $50,000.00 per person and $100,000.00 per accident, as the policy stated on its face. The Armwoods sought a declaration that the policy provided coverage of $750,000.00. Based on its interpretation of the relevant statutes, the trial court denied plaintiff's motion and concluded that the policy should be reformed to provide coverage of $750,000.00.

## N.C. FARM BUREAU MUT. INS. CO. v. ARMWOOD

[181 N.C. App. 407 (2007)]

"The primary goal of statutory construction is to effectuate the purpose of the legislature in enacting the statute[,]" and that purpose " 'is first ascertained by examining the statute's plain language.' " *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 574, 573 S.E.2d 118, 121 (2002) (citation omitted). When that language is " ' "clear and unambiguous," ' " the court is " ' "without power to interpolate, or superimpose, provisions and limitations not contained therein." ' " *Id.* at 575, 573 S.E.2d at 121 (citations omitted).

In general, insurance policies must be reformed when an applicable statute conflicts with the terms of the insurance policy; at that point, "the provisions of that statute become terms of the policy to the same extent as if they were written in it[.]" *Baxley v. Nationwide Mutual Ins. Co.*, 334 N.C. 1, 6, 430 S.E.2d 895, 898 (1993). However, our Supreme Court has only reformed policies in cases where an insurer failed to comply with a requirement of the 1953 Act that places a direct burden on the insurer and policy, not the owner. *See, e.g., Bray v. N.C. Farm Bureau Mut. Ins. Co.*, 341 N.C. 678, 685-86, 462 S.E.2d 650, 654 (1995) (invalidating family-owned vehicle exclusion to uninsured motorist coverage because section 20-279.21(b) mandated a minimum amount of coverage). "In the absence of any provision in the Financial Responsibility Act broadening the liability of the insurer, such liability must be measured by the terms of the policy as written." *Younts v. Insurance Co.*, 281 N.C. 582, 585, 189 S.E.2d 137, 139 (1972).

As discussed below, in this case the terms of the policy do not *conflict* with the statute, because it is not the individual policy that must comply with the minimum requirements but rather the insured's overall coverage. As such, this Court should measure plaintiff's liability by the terms of the policy as written. Although such a result might not result in the complete protection of individuals from the risks associated with commercial vehicles, that issue is properly addressed by the legislature, not by this Court.

Two statutes are at issue in this case: the Vehicle Financial Responsibility Act of 1957 ("1957 Act") and the Financial Responsibility Act of 1953 ("1953 Act"). N.C. Gen. Stat. § 20-309(a1) (2005), part of the 1957 Act, by its plain language puts the onus on *owners* to maintain required liability insurance on their vehicles: "An *owner* of a commercial motor vehicle, as defined in G.S. 20-4.01(3d), shall have financial responsibility for the operation of the motor vehicle in an amount equal to that required for for-hire carriers trans-

porting nonhazardous property in interstate or foreign commerce in 49 C.F.R. § 387.9." *Id.* (emphasis added).

The 1953 Act specifically addresses individual policies rather than individual owners. It states that every owner's policy of liability insurance shall provide the following minimum coverage against loss from liability "for damages arising out of the ownership, maintenance or use" for the covered vehicle: $30,000.00 for injury or death to one person, $60,000.00 to two or more persons in one accident, and $25,000.00 for injury or destruction of property in one accident ($30/$60/$25). N.C. Gen. Stat. § 20-279.21(b)(2) (2005). The plain language of the statute itself actually inserts these specific amounts into every policy as a matter of law.

Because both acts have the same general purpose—namely, protecting the innocent from irresponsible drivers—the two should be read in conjunction, as the majority notes. "Statutes *in pari materia* are to be construed together, and it is a general rule that the courts must harmonize such statutes, if possible, and give effect to each[.]" *Blowing Rock v. Gregorie*, 243 N.C. 364, 371, 90 S.E.2d 898, 904 (1956).

However, the majority's holding reads the Acts together to create a mandate by the 1953 Act (which explicitly sets out the $30/$60/$25 minimums) that plaintiff's policy provide coverage in the amount specified by the 1957 Act ($750,000.00). This controverts the plain language of the two provisions of the 1957 Act at issue. Again, the plain language of N.C. Gen. Stat. § 20-309(a) and (a1) both put the onus on the *owner*. (N.C. Gen. Stat. § 20-309(a) states: "No motor vehicle shall be registered in this State unless the owner at the time of registration has financial responsibility for the operation of such motor vehicle, as provided in this Article.") Reading the two Acts in conjunction cannot mean eliminating this plain language by "superimpos[ing]" in the 1957 Act the language of the 1953 Act placing the onus on the insurer.

The trial court itself stated that:

Best, ***as the owner*** of the 1974 30 passenger bus, a commercial motor vehicle, had the duty and responsibility to obtain the applicable minimum liability coverage for the vehicle. ***G.S. 20-309(a1) places the duty to obtain and maintain the appropriate coverage, consistent with the use of the commercial vehicle, on the owner.***

This conclusion of law explicitly looks to the 1957 Act and places the duty and responsibility for obtaining the correct minimum liability coverage on Best. Despite its own conclusion, however, the trial court then found that plaintiff had a duty to issue the policy for $750,000.00 and reformed the existing policy to reflect that level of liability. This finding incorrectly holds *plaintiff* responsible for the duty and responsibility the trial court had laid at Best's door.

Further, I see no statutory justification for the majority's holding that we must read a minimum $750,000.00 clause into this contract. As the majority states, our Courts have consistently held that the minimum coverage required by N.C. Gen. Stat. § 20-279.21(b) ($30/$60/$25) is written into every insurance policy as a matter of law. But note the plain language of this statute:

> (b) [Each] owner's policy of liability insurance:
>
> . . .
>
> (2) Shall insure the person named therein . . . against loss from the liability imposed by law for damages . . . with respect to each such motor vehicle[] as follows: thirty thousand dollars ($30,000) because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, sixty thousand dollars ($60,000) because of bodily injury to or death of two or more persons in any one accident, and twenty-five thousand dollars ($25,000) because of injury to or destruction of property of others in any one accident[.]

N.C. Gen. Stat. § 20-279.21(b)(2). The statute, unlike N.C. Gen. Stat. § 20-309(a1), specifically addresses an element that every policy must contain. Clearly, legislative intent was that this statute should act to reform any policy that was not in line with these statutory minimums ($30/$60/$25). As mentioned, N.C. Gen. Stat. § 20-309(a1) sets out the minimum liability insurance responsibility of the *owner* of a commercial vehicle. Had the legislature intended this particular provision to reform all policies not in line with the minimums set out for commercial vehicles ($750,000.00), it could easily have done so by adding to section 20-309(a1) similar construction and language as that used by section 20-279.21(b)(2) requiring all policies to have the $30/$60/$25 minimum. Had the legislature intended this reformation, it could also have simply amended section 20-279.21(b) in the 1953 Act with such

language, inserting in all commercial vehicle policies the $750,000.00 minimum requirement. Since the legislature did neither, this Court should not impose such a requirement.

Defendants further argue that the language of N.C. Gen. Stat. § 20-309(b) indicates that only one policy may be used to meet the minimum coverage ("[f]inancial responsibility shall be *a* liability insurance policy . . ." (emphasis added)), agreeing with the trial court's conclusion that plaintiff's issuance of a policy below statutory minimums ($750,000.00) was an "invalid and inappropriate choice[.]" However, the 1953 Act, with which this statute must be read in conjunction, allows a commercial vehicle owner to meet the requirements of liability coverage "by the policies of one or more insurance carriers which policies together meet such requirements." N.C. Gen. Stat. § 20-279.21(j). Thus, again, the onus is placed on Best, not plaintiff, to obtain the appropriate minimum coverage.

Defendants also argue that, because the Farm Bureau policy did not meet the statutory minimums, Best would not have been able to register his motor vehicle ("[n]o motor vehicle shall be registered in this State unless the owner at the time of registration has financial responsibility for the operation of such motor vehicle"). N.C. Gen. Stat. § 20-309(a). This argument fails because, again, Best could have obtained the statutory minimum of coverage from multiple insurers. The record does not indicate that plaintiff issued a policy that falsely stated the amount of Best's coverage or inappropriately certified Best for registration purposes; any error in registering the vehicle made by the State cannot be laid at plaintiff's feet.

In sum, the majority's holding puts an onus on insurance companies that I do not believe is warranted by the statutes. The plain language of the 1957 Act places on the *owner* the onus for ensuring that minimum statutory requirements for liability insurance are met.

This Court should not disturb the contract between the parties and the motion for summary judgment should have been granted. If the legislature had intended for commercial vehicles to be covered by only one liability insurance policy with a minimum coverage of $750,000.00, it could easily have done so.

It is important to note that the legislature's purpose in creating these Acts was clearly to protect the public by having higher mandatory minimum liability insurance coverage for commercial vehicles because the potential for damage to property and individuals is

higher. However, the legislature addressed that concern by putting the onus for obtaining adequate coverage on the owner. In this particular case, unfortunately, that purpose was not effected, but it is the legislature's provenance to correct this problem; it is not for the courts to impose a correction.

I would reverse the trial court's order partially granting the Armwoods' motion for summary judgment because, based on the applicable statutes comprising the 1953 and 1957 Acts, it was error for the trial court to reform the insurance policy at issue to reflect $750,000.00 in liability coverage. Further, since Best had no obligation to purchase his entire minimum coverage from one insurer, and plaintiff had no obligation to issue a policy for the statutory minimum, I would reverse and remand the trial court's denial of plaintiff's motion for summary judgment.