Exela Pharma Scis., LLC v. REI Automation, Inc., 2026 NCBC 30.

STATE OF NORTH CAROLINA

CALDWELL COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24CVS000158-130

EXELA PHARMA SCIENCES, LLC,

        Plaintiff,

v.

REI AUTOMATION, INC.,

        Defendant.

**ORDER AND OPINION ON
DEFENDANT'S MOTION FOR
PARTIAL SUMMARY JUDGMENT**

1. This case arises out of a dispute over a contract for the development of an intravenous (IV) bag filling system. Plaintiff Exela Pharma Sciences, LLC claims that Defendant REI Automation, Inc. misrepresented its expertise and failed to design and deliver the system as promised. REI denies the allegations and blames Exela for the project's failure. REI's motion for partial summary judgment is now pending, as are two related motions to strike certain evidence and to supplement the record. (*See* ECF Nos. 61, 81, 105.) For the following reasons, the Court **GRANTS** REI's summary-judgment motion and **DENIES as moot** its motions to strike and supplement.

> *Nelson Mullins Riley & Scarborough LLP, by G. Gray Wilson and Linda L. Helms, and Chintapalli Law Firm, PLLC, by Satish Chintapalli, for Plaintiff Exela Pharma Sciences, LLC.*

> *Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP, by Hope Garber, Christopher G. Smith, and Daniel Harrell, and Orrick, Herrington & Sutcliffe, LLP, by David P. Fuad, for Defendant REI Automation, Inc.*

Conrad, Judge.

# I.
# BACKGROUND

2.      The Court does not make findings of fact when deciding motions for summary judgment. The purpose of this background is to give context for the Court's analysis and ruling.

3.      Exela makes and sells pharmaceuticals. For some products, Exela uses a post-manufacturing process called terminal sterilization to reduce microbial contamination. This is done by putting the finished pharmaceutical product into an autoclave and using a combination of high pressure and high temperature to kill microbes. For products that cannot survive high temperatures, Exela uses an aseptic manufacturing process without terminal sterilization. In this context, an aseptic process broadly means that the pharmaceutical manufacturing process itself is designed to prevent or mitigate microbial contamination. (*See* 30(b)(6) Dep. P. Koneru 17:4–10, 18:9–19:19, 38:3–11, ECF Nos. 62.2, 72.1.)

4.      REI describes itself as a builder of special or custom machinery. Its customers include pharmaceutical makers, as well as other businesses in fields as varied as the nuclear, automotive, and consumer products industries. (*See* Dep. M. Ahring 16:6–24, ECF Nos. 62.5, 72.11.)

5.      In the summer of 2021, the parties began discussing a project to design and build a robotic, aseptic IV bag filler machine. At that time, Exela was seeking regulatory approval for a new product to be manufactured aseptically and delivered through IV bags. But its existing IV bag filler was not automated and would not have been suitable for this product. Ernest Shepard, who was then serving as Exela's chief

operating officer, had worked with REI in the past and recommended engaging it to create an aseptic robotic bag filler that could operate at scale. A series of meetings and communications followed in late July and early August 2021. During these preliminary discussions, Exela's representatives toured REI's facilities, and REI told Exela that it was in the process of building an aseptic IV bag filling system for another company. (*See* 30(b)(6) Dep. P. Koneru 93:6–94:20, 135:2–136:17; Dep. E. Shepard 7:17–8:9, 71:4–72:22, ECF Nos. 62.3, 72.2; Dep. M. Pope 50:3–51:14, ECF Nos. 62.4, 72.5; Aff. E. Shepard ¶¶ 2, 3, ECF No. 72.6.)

6.      At the end of October 2021, REI tendered a proposal in which it touted its "core competencies" as its "ability to develop elegant, robust automation system designs from fully automatic assembly lines to robotic cells to semi-automatic lean assembly cells." The proposal also contains a project description, various conceptual sketches, price and payment terms, a summary of deliverables, and more. Exela accepted the proposal and issued a purchase order just a few days later. Together, the proposal and the purchase order make up the parties' contract. (Aff. E. Shepard Ex. A; 30(b)(6) Dep. P. Koneru Ex. 18; Dep. E. Shepard 110:2–7.)

7.      REI began working on the project soon after but never completed it. The parties now blame each other for its failure. According to Exela, a third-party consulting firm assessed REI's progress and determined that its work was shoddy and beyond salvaging. What this shows, Exela says, is that REI lacked the necessary expertise and bit off more than it could chew. REI's answer to that charge is that it takes two to tango. As REI tells it, Exela derailed the project by withholding crucial

input, repeatedly making design changes, and either firing or failing to retain most of the staff members responsible for coordinating with REI. Whatever the true reason may have been, it is undisputed that Exela terminated the project in 2023. (*Compare, e.g.*, Decl. W. McKinney ¶¶ 2, 3, ECF No. 72.7; Dep. M. Ahring 20:13–16, *with, e.g.*, 30(b)(6) Dep. P. Koneru 176:6–9, 191:16–192:4; Dep. G. Phillips 19:19–23, ECF No. 62.8.)

8. Exela then filed this action, complaining that it had paid REI more than $3 million with nothing to show for the effort. The complaint claims that REI breached the parties' contract and seeks damages and declaratory relief, as well as rescission as an alternative remedy. The complaint also asserts claims for fraud and unfair or deceptive trade practices under N.C.G.S. § 75-1.1 based on the allegation that REI's October 2021 "budget proposal . . . was false and fraudulent" because REI "knew that it lacked the expertise to fabricate" the bag filler system "in a timely manner and actively concealed . . . that it had never manufactured such products before." By counterclaim, REI asserts that Exela breached the parties' contract. (*See, e.g.*, Compl. ¶¶ 6–8, 11, 13, 16, 21, 23, ECF No. 3; Ans. & Countercl., ECF No. 7.)

9. Discovery is now closed. REI has moved for partial summary judgment on Exela's fraud and section 75-1.1 claims. During briefing on the summary-judgment motion, REI also filed a motion to strike certain evidence attached to Exela's response brief, primarily on the ground that Exela had obtained the documents from a nonparty and then neglected to produce them to REI during discovery.

10. Once briefing on these motions was complete, the Court held a hearing on 10 February 2026. Afterward, REI moved to supplement the record, contending that Exela had mischaracterized certain evidence during the hearing. Briefing related to the motion to supplement ended on 9 March 2026.

11. REI's motions are now ripe for resolution.

## II.
## LEGAL STANDARD

12. Summary judgment is proper when the record "show[s] that there is no genuine issue at to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c). The Court must view the evidence in the light most favorable to the nonmoving party and draw all inferences in its favor. *See Vizant Techs., LLC v. YRC Worldwide, Inc.,* 373 N.C. 549, 556 (2020); *N.C. Farm Bureau Mut. Ins. Co v. Sadler,* 365 N.C. 178, 182 (2011).

## III.
## ANALYSIS

13. REI's motion targets Exela's fraud claim. REI also contends that Exela's section 75-1.1 claim is predicated on the fraud claim, so that the two claims rise or fall together.

14. Fraud has five "essential elements": (a) a false representation or concealment of a material fact, (b) calculated to deceive, (c) made with intent to deceive, (d) that did in fact deceive, and (e) that resulted in damage to the injured party. *Rowan Cnty. Bd. of Educ. v. U.S. Gypsum Co.,* 332 N.C. 1, 17 (1992). The plaintiff must show not only that it actually relied on the misrepresentation or

omission but also that its reliance was reasonable. *See Forbis v. Neal*, 361 N.C. 519, 527 (2007).

15. Because "silence is fraudulent only when there is a duty to speak," a claim based on "concealment or nondisclosure" requires the plaintiff to show that the defendant "had a duty to disclose material information." *Lawrence v. UMLIC-Five Corp.*, 2007 NCBC LEXIS 20, at *8 (N.C. Super. Ct. June 18, 2007) (citing *Griffin v. Wheeler-Leonard & Co.*, 290 N.C. 185, 198 (1976)). A duty to disclose arises when the parties are in a fiduciary relationship, when one party "has taken affirmative steps to conceal material facts from the other," or when "one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence." *Harton v. Harton*, 81 N.C. App. 295, 297–98 (1986).

16. Simple notice pleading is insufficient for fraud claims; particularity is required. *See* N.C. R. Civ. P. 9(b). If the claim is based on a misrepresentation, the plaintiff must allege the "time, place and content" of the misrepresentation, the "identity of the person making the representation," and "what was obtained as a result." *Terry v. Terry*, 302 N.C. 77, 85 (1981). If the claim is based on concealment, the plaintiff must allege:

> (1) the relationship between plaintiff and defendant giving rise to the duty to speak; (2) the event or events triggering the duty to speak and/or the general time period over which the relationship arose and the fraudulent conduct occurred; (3) the general content of the information that was withheld and the reason for its materiality; (4) the identity of those under a duty who failed to make such disclosures; (5) what the defendant gained by withholding information; (6) why plaintiff's

reliance on the omission was both reasonable and detrimental; and (7) the damages proximately flowing from such reliance.

*Lawrence*, 2007 NCBC LEXIS 20, at *9 (citation and alterations omitted).

17.    Exela's complaint pleads both misrepresentations and concealment. REI allegedly misrepresented its "design and manufacturing expertise" and its ability to provide an IV bag filling system "in several months." (Compl. ¶ 6.) REI also allegedly concealed that "it had never attempted to build an aseptic bag filling system." (Compl. ¶ 7.) These allegations define and delimit the scope of the fraud claim. (*See* Compl. ¶ 16 (alleging fraud on the grounds that REI "knew that it lacked the expertise to fabricate such products in a timely manner and actively concealed from plaintiff that it had never manufactured such products before").)

18.    REI contends that these allegations lack particularity, thus entitling it to summary judgment. Exela's response brief says nothing about particularity and makes no attempt to show that the complaint's allegations satisfy Rule 9(b). Asked to address the issue at the hearing, Exela's counsel argued that insufficient particularity in the complaint is not a valid basis for summary judgment.

19.    Thus, a threshold question arises: is summary judgment appropriate if a complaint does not state a claim for fraud with particularity?

20.    Yes, it is. Appellate precedent is crystal clear on this point. A complaint must allege fraud "with particularity," and "[i]f it does not, summary judgment is proper." *Trull v. Cent. Carolina Bank & Tr. Co.*, 117 N.C. App. 220, 224 (1994); *see also, e.g., Leake v. Sunbelt Ltd. of Raleigh,* 93 N.C. App. 199, 205 (1989) (affirming grant of summary judgment due to failure to allege fraud with particularity); *In re*

*Se. Eye Center-Pending Matters*, 2019 NCBC LEXIS 29, at \*47 (N.C. Super. Ct. May 7, 2019) (collecting cases holding that "summary judgment is appropriate . . . where a plaintiff has failed to plead fraud with particularity").

21. This leads to a second question: does Exela's complaint allege fraud with the particularity required by Rule 9(b)?

22. No, it does not. Starting with the allegations of fraudulent concealment, the complaint does not allege, even in a conclusory way, that REI had a duty to speak. Nor does it allege facts that might give rise to a duty to speak, such as affirmative acts of concealment. This is a glaring defect, especially so given the usual rule that parties negotiating a commercial transaction at arm's-length have no duty of disclosure. *See, e.g.*, *Comput. Decisions, Inc. v. Rouse Office Mgmt. of N.C., Inc.*, 124 N.C. App. 383, 389 (1996) (observing that parties had "no duty of disclosure" when negotiating a commercial transaction). REI is therefore entitled to summary judgment as to the allegations of fraudulent concealment.

23. The allegations of fraudulent misrepresentation are also deficient. To be sure, the complaint does say when and where the misrepresentations were supposedly made ("a budget proposal dated October 12, 2021"), as well as who made them (REI's "employee, Graham Chapman"). (Compl. ¶ 6.) But it does not adequately allege a fraudulent representation in other respects.

24. Consider, first, the allegation that REI misrepresented its "design and manufacturing expertise" in the proposal. (Compl. ¶ 6.) What did REI say about its expertise? The complaint provides no detail. As our Supreme Court has made clear,

"[t]here is a requirement of specificity as to the element of a representation made by the alleged defrauder." *Rowan Cnty. Bd. of Educ.*, 332 N.C. at 17. Were it otherwise, courts could not distinguish "mere puffing" and other nonactionable statements from true "misrepresentations of material facts." *Id.* The complaint's vague allegation that REI misrepresented its expertise is not "definite and specific" and therefore cannot support a fraud claim. *See Charlotte Motor Speedway, LLC v. Cnty. of Cabarrus*, 230 N.C. App. 1, 10 (2013) (concluding that defendant's alleged representation about its "ability to fund the promised amounts" was not "definite and specific").

25. Rather than defend the claim as alleged, Exela shifts gears in its response brief and offers a new theory. According to Exela, REI represented in a slide deck in August 2021 that it had "expertise in designing and building a *turnkey* aseptic IV Bag filler" and that it "had *already designed and built* an aseptic IV bag filler for another customer." (Resp. Br. 11, ECF No. 72 (emphases added).) Note the material differences in time, place, and content. This is not what Exela alleged in its complaint, and the Court will not entertain a novel theory presented for the first time at summary judgment. *See, e.g.*, *Fund 19-Miller, LLC v. Isbill*, 2021 N.C. App. LEXIS 624, at *11 (N.C. Ct. App. 2021) (unpublished) ("Litigants are unable to assert new theories of recovery that were not alleged in the complaint at summary judgment . . . ."); *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2024 NCBC LEXIS 153, at *114 (N.C. Super. Ct. Nov. 26, 2024) (concluding that it "would be fundamentally unfair" to allow a party to raise a "new theory . . . at this late date");

*B&D Software Holdings, LLC v. Infobelt, Inc.*, 2024 NCBC LEXIS 103, at \*17–18 (N.C. Super. Ct. Aug. 1, 2024) ("A basic tenet of our civil justice system is that a claimant's initial pleading must adequately inform the responding party of what it is alleged to have done wrong so that it can defend itself accordingly.").

26.     That leaves the allegation that REI promised that it could finish the job "in several months." (Compl. ¶ 6.) "An unfulfilled promise is not actionable fraud . . . unless the promisor had no intention of carrying it out at the time of the promise." *McKinnon v. CV Indus., Inc.*, 213 N.C. App. 328, 338 (2011); *see also Trull*, 117 N.C. App. at 225 ("A promissory misrepresentation will not normally support an allegation of fraud."). Nowhere does the complaint allege with particularity that REI had no intention of fulfilling its obligations on time. *See Leake*, 93 N.C. App. at 205 ("Since plaintiffs . . . failed to allege defendants' intent at the time the representations were made, we affirm that portion of the trial court's order granting summary judgment for defendants on the fraudulent misrepresentation of recreational facilities claim."). And in any event, Exela's response brief does not discuss or rely on this alleged misrepresentation, suggesting that it has been abandoned.

27.     In sum, Exela did not plead its fraud claim with the particularity required by Rule 9(b). As a result, summary judgment as to this claim is appropriate. *See, e.g., Gvest Real Est., LLC v. JS Real Est. Invs., LLC*, 2023 NCBC LEXIS 110, at \*21 (N.C. Super. Ct. Sept. 12, 2023) (granting summary judgment because claimant failed to plead fraud claim with adequate particularity).

28.    For similar reasons, REI is entitled to summary judgment as to Exela's section 75-1.1 claim.  Indeed, this claim is predicated entirely on Exela's allegations of fraud and breach of contract.  (*See* Compl. ¶ 21 (stating generally that the "misconduct alleged herein constitutes unfair and deceptive acts or practices").)  It is elementary that "a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1." *Post v. Avita Drugs, LLC*, 2017 NCBC LEXIS 95, at *10 (N.C. Super. Ct. Oct. 11, 2017) (quoting *Branch Banking & Tr. Co. v. Thompson*, 107 N.C. App. 53, 62 (1992)).  There must be some additional, aggravating circumstance.  Fraud would usually suffice, but Exela has not adequately alleged fraud.  Nor has it alleged any other conduct that could be considered an aggravating circumstance.  Accordingly, the section 75-1.1 claim fails on its face.  *See, e.g.*, *Brown v. Roth*, 133 N.C. App. 52, 56 n.3 (1999) ("Because we hold there is no evidence of fraud, it follows the unfair and deceptive trade practices claim also must fail."); *Whalen v. Tuttle*, 2024 NCBC LEXIS 146, at *14–16 (N.C. Super. Ct. Nov. 19, 2024) (granting motion to dismiss a "catchall" section 75-1.1 claim predicated on a deficient fraud claim and related claim for breach of contract).

29.    In an attempt to save its section 75-1.1 claim, Exela again belatedly introduces a new theory, this time based on REI's supposed bad faith during settlement negotiations that took place before this litigation began.  It is doubtful whether the asserted conduct—which is bound up with the parties' perceived contractual rights and obligations—could support a section 75-1.1 claim even if Exela had included the allegations in its complaint.  Regardless, Exela did not, and it may

not revamp its claim at summary judgment. *See, e.g.*, *Fund 19-Miller*, 2021 N.C. App. LEXIS 624, at *11.

30. Accordingly, the Court grants REI's motion for partial summary judgment as to Exela's fraud and section 75-1.1 claims. It follows that REI's motion to strike and motion to supplement are moot.

## IV.
## CONCLUSION

31. For all these reasons, the Court **GRANTS** REI's motion for partial summary judgment. Exela's claims for fraud and violations of section 75-1.1 are **DISMISSED** with prejudice.

32. The Court also **DENIES as moot** REI's motion to strike and motion to supplement the record.

      **SO ORDERED**, this the 2nd day of April, 2026.


               /s/ Adam M. Conrad
               Adam M. Conrad
               Special Superior Court Judge
                for Complex Business Cases